Argued and submitted October 7, remanded in part; otherwise affirmed
December 4, 1996

In the Matter of the Marriage of

Cary GUDMUNDSON,
*Appellant,*

*and*

Dolly GUDMUNDSON,
*Respondent.*

(15-95-02362; CA A91806)

929 P2d 319

Margaret H. Leek Leiberan argued the cause for appellant. With her on the brief was Leiberan & Gazeley.

Edward C. Singer, Jr., argued the cause for respondent. With him on the brief were Douglas J. Dennett and Dennett & Fredericks, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Husband appeals from a dissolution judgment, challenging the trial court's award of child and spousal support and its award of an equalizing judgment to wife. On *de novo* review, ORS 19.125(3), we modify the award of spousal support, remand for recalculation of child support and otherwise affirm.

The parties were married in December 1988 and separated in July 1994. At the time of trial in December 1995, husband was 33 years old and wife was 30; both are in good health. They had no children during their marriage, but husband adopted wife's son from her previous relationship. Wife was awarded custody of that child, age eight. The child suffers from Duchenne's muscular dystrophy and is paralyzed from the waist down. According to his doctor, he probably will become bedridden by age 17 or 18 and has a short life expectancy.

Wife is a high school graduate with secretarial skills and a certificate in office automation and desktop publishing. She speaks both English and Spanish and works as a bilingual job placement counselor for a nonprofit agency. Her gross salary is $1,386 per month and she receives $262 per month in social security benefits for the child. The child is on the Oregon Health Plan and receives aid from Shriner's Hospital. Wife testified that she would like to enhance her job skills and find a better paying job but she believes that she will have difficulty doing so because of the time she must spend caring for the child. Presently, the child is able to attend school and goes to day care after school, but as his condition deteriorates, wife would like to spend more time at home with him and plans to care for him full time when it becomes necessary. As his disease progresses, he will require more medical equipment and mobility aids, the cost of which could reach $52,400.

Husband is an independent contractor who sells medical equipment for Pacific Medical, Inc. (Pacific Medical). He is paid by commission and his sales territory is between Corvallis and the California border. Before November 1, 1995, he sold products both for Pacific Medical and for OJI

Surgical, Inc. (OJI). The parties' tax returns reflect that husband earned gross incomes of $94,582 in 1993, $90,644 in 1994, and $97,200 in 1995, or a monthly average of $7,845.17, over the last three years. In 1995, his gross monthly average income was $8,000 per month.

At trial, husband testified that his past earnings were not indicative of his present earning capacity because he lost his position with OJI at the end of October 1995. His former boss at OJI, Kraus, testified that husband was fired after OJI lost its biggest product line. Kraus also testified that OJI had paid husband an average monthly commission of $3,474.42 in 1993, $3,226.64 in 1994 and $3,398.03 in 1995. Husband testified that he would be unable to replace this income by working for another company, because Pacific Medical now objects to his selling other companies' products. According to husband, after he lost his position at OJI, Pacific Medical encouraged him "to stay solely with them." However, he conceded that although Pacific Medical's policy had always been to discourage its representatives from working for other companies, it had allowed him to work for OJI because of the costs incurred as a result of the child's disability.

Husband testified that although his gross income for his first full month of working solely for Pacific Medical, November 1995, was $7,021.21, he believes that his December 1995 income of $4,046.65 more accurately reflects his current earning capacity. However, he also testified that he had taken some time off in December. Husband testified that his earnings would decline even further in the future, because Pacific Medical was losing a product line that accounted for $540 per month of his income in 1995.

Husband presented conflicting evidence concerning his business expenses. In his trial memorandum, he stated that he incurred "approximately $31,000 [$2,583 per month] in business expenses per year." At trial, husband provided the court with a hand-written list of his expenses, calling that exhibit "a close representation of my expenses." Exhibit 8 listed the following monthly business expenses: office phone, $250; mobile phone, $425; gas, $350; automobile maintenance, $50; pager, $36.40; office expenses, $50.00; samples,

$100; and payment on credit card for business, $500. Exhibit 8 also included category headings entitled "Electric % of Bill" and "Room % of Bill," but those categories were left blank. The expenses listed in exhibit 8 total $1,761.40 per month.[1] Husband also testified that the parties' 1994 tax return, which listed his expenses as $34,897 ($2,908 per month), accurately reflected the business expenses that he incurred in 1994. However, he provided no receipts or other documentation of those expenses.

On cross-examination, husband conceded that Pacific Medical occasionally paid a small portion of his expenses "up front" and that those amounts then were deducted from his commission totals before he was paid. In addition, he testified that he does not keep a mileage journal for tax purposes. Instead, he writes down his car's mileage at the start of the year and then reports the difference between it and the mileage at the end of the year as business-related mileage. He is unable to distinguish between business and personal mileage. He also testified that although he keeps receipts from business-related entertainment, he does not document the nature of the business conducted.

The trial court made no explicit findings about the parties' incomes or the amount it allowed husband to deduct for business expenses. However, a worksheet attached to the court's opinion shows that it calculated husband's child support obligation by using $1,300 as wife's gross monthly income and $6,000 as husband's gross monthly income after allowable expenses. It awarded wife $644.18 per month in child support; spousal support of $1,500 per month to continue until the child's 21st birthday or his death, whichever comes first; and a $9,000 equalizing judgment to compensate for an unequal division of the property and to "reflect the use of marital funds" in husband's purchase of a separate home in December 1994.

Husband's first three assignments of error challenge the trial court's calculation of child support. He argues that the award was based on erroneous income figures for both

---

[1] Husband had written "1st qtr 94 2989.12 per month expense" at the bottom of exhibit 8. He did not explain the $1,227.72 disparity.

husband and wife, that the trial court failed to take into account the unrefuted evidence that his income will decline dramatically in 1996 and that it failed to deduct the full amount of his business expenses when determining his gross income. Husband contends that his gross monthly income for 1996 should be based on his sales for Pacific Medical for 1994 and 1995, after deducting the commissions from the lost product line. According to husband, his 1996 gross income after allowable expenses will be $2,735 per month. He also contends that wife's gross monthly income is $1,386, not $1,300.

Wife agrees that her gross monthly income is $1,386 and concedes that an appropriate adjustment should be made regarding husband's child support obligation. However, wife contends that the trial court correctly determined husband's earning capacity to be $6,000 per month after allowable business expenses. She argues that that figure reflects husband's earnings over a three-year period, including the two months after husband lost his job at OJI and was selling only for Pacific Medical. She also argues that the trial court correctly refused to calculate husband's business expenses based on the parties' tax returns, because husband failed to provide receipts to justify the expenses and his testimony at trial called into question the accuracy of those returns.

Wife is correct that husband's support obligation must be based on a determination of his "recent work history, occupational qualifications, or prevailing job opportunities and earnings levels in the community." OAR 137-50-360(2)(a); *Harper and Harper*, 122 Or App 9, 13, 856 P2d 334, *rev den* 318 Or 246 (1993), *cert den* 511 US 1108, 114 S Ct 2103, 128 L Ed 2d 665 (1994); *Uppendahl and Uppendahl*, 112 Or App 283, 286, 828 P2d 1048 (1992). Income from self-employment is defined as "gross receipts minus * * * ordinary and necessary expenses required for self-employment or business operation." OAR 137-50-350(1). Specifically excluded from ordinary and necessary expenses are deductions allowed by the Internal Revenue Service for the accelerated component of depreciation expenses, investment tax credits, or "any other business expenses determined by the * * * Court * * * to be inappropriate for determining gross

income for purposes of calculating child support." OAR 137-50-350(1). When claiming offsets for ordinary and necessary business expenses, "[t]he obligor has the burden of proof and must furnish documentation to support any offsets claimed." ORS 25.290.

■    In this case, the record does not support husband's speculation that his income will drop dramatically in the future. Husband earned over $7,000 in his first month of working solely for Pacific Medical. Although his income decreased in the second month, husband testified that he did not work the full month and that it was in the nature of the business for earnings to vary widely from month to month. Furthermore, husband provided contradictory evidence about his ability to find a position similar to the one that he held with OJI. He testified that Pacific Medical's policy regarding dual employment actually had not changed and that the company previously had allowed him to supplement his income because of his son's disability. Under these circumstances, we conclude that it is appropriate to base husband's gross monthly income on his three-year historical average: $7,845.17. *See Mask and Mask*, 143 Or App 377, 383, 923 P2d 1304 (1996) (when speculating on the parties' future financial circumstances, "we must rely on the best evidence available, which, in most instances, is the financial history of the parties").

■    With respect to husband's claimed business expenses, we conclude that it is appropriate to allow him to deduct only those expenses set out in exhibit 8 ($1,761.40), not the entire amount he claimed on his tax returns. Husband not only failed to provide the documentation required to claim business expenses, he testified that he does not keep such records. However, husband is entitled to claim an offset for his self-employment tax, which was $655 per month in 1994. *See Redler and Redler*, 112 Or App 203, 206, 827 P2d 1363 (1992) (self-employment tax is an "ordinary and necessary expense" that is required for self-employment and should be deducted). Accordingly, we remand for the trial court to recalculate husband's child support obligation based on wife's monthly gross income of $1,386 and husband's monthly gross income of $5,428.77 ($7,845.17 minus $2,416.40 in allowable expenses).

■ Husband's fourth and fifth assignments of error challenge the trial court's award of $1,500 per month spousal support and the court's decision to tie the duration of that support to the child's 21st birthday or his death, whichever comes first. Husband contends that the court awarded the substantial spousal support solely because wife has custody of a disabled child. He argues that there is no evidence that the child's condition affects wife's ability to work and emphasizes wife's testimony that she does not expect the child to be bedridden until he is 17 or 18 years old, which is 10 years from now.

Wife responds that the spousal support award is justified, because the amount and duration of that award will enable her to make the transition to self-sufficiency at an income level that is reasonable in the light of the standard of living that she enjoyed during the marriage. She also argues that the award is appropriate because she will need to spend more and more time with the child and will incur greater costs for the medical equipment that he will require.

In setting the appropriate amount and duration of spousal support, we attempt to award "such amount of money for such period of time as it may be just and equitable" for the supporting party to pay. ORS 107.105(1)(d). We consider a variety of factors, including the length of the marriage, the ages and health of the parties and their dependent children, each party's earning capacity considering his or her education, skills and work experience, the extent to which that capacity has been enhanced by the efforts of the other or impaired by extended absence from the job market, and the need for education or training to enable a party to become self-supporting. ORS 107.105(1)(d)(A-G); *Ley and Ley*, 133 Or App 138, 141, 890 P2d 440 (1995). The amount of the award should be reasonable and should enable the supported party to enjoy a standard of living not "overly disproportionate to that enjoyed during the marriage, to the extent that that is practicable." ORS 107.105(1)(d)(F); *Christensen and Christensen*, 123 Or App 412, 416, 859 P2d 1192 (1993). We set the duration of the award "on terms that are equitable between the parties," taking into account both need and ability to pay and keeping in mind "the goal of ending the support-dependency relationship within a reasonable time if that can be

accomplished without injustice or undue hardship." *Grove and Grove*, 280 Or 341, 353, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977). It is improper to award support for a period of time that is defined by a contingency that is a matter of mere speculation. *Harris and Harris*, 142 Or App 427, 431, 921 P2d 1329 (1996).

In this case, the parties were married for approximately five years. They are both young and are in good health. There is no claim that wife contributed to husband's earning capacity or that she suffered any impairment in her own earning capacity during the marriage. Although taking care of the parties' child may place some limits on wife's ability to become self-sufficient, at the present time the child is in school full-time and is in day care after school. He is not expected to be bedridden for approximately 10 years. Under these circumstances, the duration of the spousal support award is not warranted. We conclude that an award of $1,500 per month for three years is appropriate to allow wife an opportunity to obtain the additional education she testified that she needs.

In his final assignment of error, husband objects to the trial court's division of marital property, arguing that the court made a number of errors in the valuation of the marital assets. After reviewing the record *de novo*, we affirm the property division and equalizing judgment without further discussion.

Remanded for entry of judgment modifying spousal support to $1,500 per month for three years and for recalculation of child support based on wife's monthly income of $1,386 and husband's monthly income of $5,428.77, commencing on entry of original trial court judgment; otherwise affirmed. No costs to either party.