Submitted on record and briefs November 5, 1997, reversed and remanded
January 7, 1998

STATE ex rel Sherry A. JUTTNER,
*Respondent,*

*v.*

Gary LOFDAHL,
*Appellant.*

(9603641CV; CA A95697)

952 P2d 81

Michael Ratliff and Parks & Ratliff filed the brief for appellant.

Hardy Myers, Attorney General, Virginia L. Linder, Solicitor General, and Jas. Adams, Assistant Attorney General, filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Father appeals a judgment setting his monthly child support obligation at $418 under the Uniform Child Support Guidelines, OAR 137-50-320 *et seq*, arguing that the record is devoid of evidence to justify such an amount. On *de novo* review, we reverse and remand.

Mother and father have never been married to each other. Child was born in March 1993, and paternity was established based on genetic testing. An administrative order and attached support calculation worksheet listed father's gross monthly income as $3,857 and set the support amount at $418 per month, which is the presumptive support obligation for that income level under the Uniform Child Support Guidelines. Father petitioned the circuit court for *de novo* review of the order, ORS 416.427, and, following a hearing, the circuit court upheld the administrative decision and set father's child support obligation at $418 per month.

■    The only issue on appeal is whether the record supports the trial court's implicit conclusion that father has a gross monthly income of $3,857. For the following reasons, we agree with father that the evidence does not support such a conclusion and remand the case for further proceedings consistent with this opinion.

The record in the present case contains documents establishing paternity, an administrative order concerning father's financial responsibility with an attached support computation worksheet of unknown origin listing father's gross monthly income as $3,857 per month, father's sworn uniform support affidavit stating that his gross monthly income is $2,700, father's 1995 state and federal income tax returns based on a gross income of $32,400,[1] and the testimony of mother and father.

---

[1] Because father claimed this amount as farm income and offset a number of farm expenses, his total taxable income was a lower amount. The $32,400 number reported on father's tax return is significant because it corroborates his testimony that he received $2,700 per month from which no taxes were withheld.

Father testified that he received $2,700 a month from Gold Dust, Inc., for work as a trucking and transportation consultant, and that no withholding taxes were deducted. Father testified that he had no financial interest in Gold Dust, Inc., and held no stock in it. He testified that Gold Dust, Inc., provided him with a 1992 Cadillac, medical insurance, and lamb and hog meat. He testified that he owned horses and cattle, and that his gross income was affected by purchases and sales of those animals.

Mother testified that father had told her that he had a 10 percent interest in Gold Dust, Inc., and a 10 percent interest in another company. She also testified that father had asked her to deposit a $10,000 check into his checking account in 1994.

No testimony was received concerning how the state arrived at a gross monthly income figure of $3,857, although mother stated at the hearing that she had told a worker at Support Enforcement Division that father had brought home monthly checks for $2,700, and that the worker must have assumed that that was father's take-home pay after withholding taxes had been deducted. At the hearing, the state conceded that the $2,700 figure represented father's gross income from Gold Dust, Inc., but argued that the court had discretion not to use that figure because father had benefits such as use of a vehicle and income from cattle that were not reflected by that figure. The trial court upheld the administrative order setting support at $418 per month.

On appeal, father asserts that evidence does not support the trial court's implicit finding that his gross income is $3,857 per month. The state responds that there is evidence in the record from which the trial court could have concluded that father was an employee of Gold Dust, Inc., and thus could have attributed "an extrapolated gross income to him on the basis of his apparent net income," and that father's farm is, in effect, a tax shelter. We agree that evidence in the record could support a conclusion that father was an employee of Gold Dust, Inc. However, given the state's concession at trial that father's gross income from Gold Dust, Inc., was $2,700 per month, the issue is whether the record

could support a conclusion that father has a gross monthly income of $3,857.

OAR 137-50-320(3) provides, in part:

" 'Gross Income' means:

"(a)   The gross income of the parent calculated pursuant to OAR 137-50-340 and 137-50-350[.]"

OAR 137-50-340 provides:

"(1)   Except as excluded below, gross income includes income from any source, including but not limited to salaries, wages, commissions, advances, bonuses, dividends, severance pay, pensions, interest, honoraria, trust income, annuities, return on capital, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes including lottery winnings, and alimony or separate maintenance received. Specifically included are benefits received from means-tested public assistance programs, including but not limited to Aid to Dependent Children (ADC), Supplemental Security Income (551), Food Stamps, and General Assistance.

"(2)   Gross income may be calculated on either an annual or monthly basis.

"(3)   If the custodial parent of a joint child is a recipient of ADC, the gross income attributed to that parent shall be the amount which could be earned by full-time work (40 hours a week) at the state minimum wage.

"(4)   Excluded and not counted as income is any child support payment."

OAR 137-50-350 provides:

"(1)   For income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership or closely held corporation, gross income is defined as gross receipts minus costs of goods sold minus ordinary and necessary expenses required for self-employment or business operation. Specifically excluded from ordinary and necessary expenses for purposes of OAR 137-50-320 to 137-50-490 are amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses, investment tax credits, or any other business

expenses determined by the Administrator, Court, or Hearings Officer to be inappropriate for determining gross income for purposes of calculating child support.

"(2) Expense reimbursements or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business shall be counted as income if they are significant and reduce personal living expenses."

The record does not support a finding of $3,857 gross monthly income based on either OAR 137-50-340 or OAR 137-50-350 or a combination of both. While it might be possible to extrapolate an individual's gross income from net income under those rules, those rules do not provide for extrapolation of a higher income than a person actually receives based on a determination that the person is paying fewer taxes than would be expected on that income.[2] This case differs from *Perlenfein and Perlenfein*, 316 Or 16, 25, 848 P2d 604 (1993), in which the court held that a parent's share of gross receipts of a closely held corporation were included in the definition of "gross income," and that evidence that such gross receipts were not actually available to the parent did not affect the gross income calculation but could be used to rebut the presumptive child support obligation. Here, by comparison, no evidence was presented that established any gross receipts of a closely held corporation attributable to father as gross income.[3] We conclude that the trial court erred in calculating the presumptive support obligation for father based on a gross monthly income of $3,857.

---

[2] Other provisions of the Uniform Child Support Guidelines do allow a court to base calculations on potential income rather than actual income, such as OAR 137-50-360 (where parent is unemployed or employed part time), and OAR 137-50-340(3) (minimum wage income attributed to welfare recipients). Those provisions are not at issue here.

[3] The state asserted at trial that father was a shareholder in several corporations but failed to produce evidence in support of that assertion. Mother testified that father had told her that he owned a 10 percent interest in two companies, and father testified that he did not have an ownership interest in those companies. Mother further testified that father asked her to deposit a $10,000 check in 1994 but did not identify the source of the check or what it was for. The record simply does not establish the amount or nature of any gross receipts that would be attributable to father under the analysis set forth in *Perlenfein*.

■ Father also argues on appeal that the trial court should have used OAR 137-50-350 to treat his income from Gold Dust, Inc., as "self-employment" income, then allowed him to deduct his farm expenses as "ordinary and necessary expenses required for self-employment," thus reducing his gross income to approximately $1,000 per month. Although father reported his income from Gold Dust, Inc., as "farm income" on his 1995 federal tax return, that fact alone does not necessarily establish that father can offset all of his farm expenses against all of his income under OAR 137-50-350. On the record before us, father has not established that expenses related to his small herd of livestock are "ordinary and necessary expenses required for self-employment" as a trucking and transportation consultant for Gold Dust, Inc. *See Gudmundson and Gudmundson*, 145 Or App 135, 141, 929 P2d 319 (1996) (when claiming offsets for ordinary and necessary business expenses, obligor has the burden of proof and must furnish documentation to support any offsets claimed; tax return itself did not establish entitlement to offset).

Reversed and remanded for recalculation of father's child support obligation.