*953 P.2d 209*

**John DOE, Appellant–Appellee,**

v.

**CHILD SUPPORT ENFORCEMENT AGENCY OF HAWAII, State of Hawai'i, Appellee–Appellant,**

and

**Jane Doe, Party–In–Interest–Appellee.**

**No. 18711.**

Intermediate Court of Appeals of Hawai'i.

Feb. 24, 1998.

Linda S. Martell, Deputy Attorney General, on the brief, for appellee-appellant.

John Doe, pro se, appellant-appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

BURNS, Chief Judge.

Appellee-Appellant Child Support Enforcement Agency of the State of Hawai'i (CSEA) appeals the family court's January 6, 1995 Order Vacating Administrative Order of September 29, 1993 (Family Court's Order). The order vacated was the Administrative Findings and Order (Administrative Order) which was signed on September 29, 1993 and filed on October 1, 1993. We reverse the Family Court's Order and affirm the Administrative Order.

## BACKGROUND

This is a secondary appeal by CSEA from an administrative agency's decision with respect to the obligation of the father (Father) of a daughter (Daughter), born on January 26, 1990, to pay child support to Daughter's mother (Mother).

Father is self-employed as a fisherman and as a consultant. Mother is employed by GTE Hawaiian Tel and is the custodial parent of Daughter. Father's paternity of Daughter was established by the Judgment filed in the Family Court of the First Circuit (FC-P No. 90–0965) on July 19, 1990. Father's initial child support obligation for Daughter was $30.00 per month. Because of an increase in his income, the Order Regarding Defendant's Motion and Affidavit for Relief After Order or Decree, filed on October 12, 1992, increased Father's child support obligation to $210.00 per month.

On June 5, 1993, CSEA notified both parents of a proposed order modifying child support. Based on information Father supplied to CSEA showing an increase in his income, his child support obligation was increased to $340.00 per month. On June 14, 1993, Mother requested a contested case hearing.

The contested case hearing occurred on August 19, 1993 and September 23, 1993 before a hearings officer (the Hearings Officer) of the Office of Child Support Hearings. The main inquiry was to ascertain each parent's income in order to determine the amount of the child support obligation pursuant to the relevant Amended Child Support Guidelines (ACSG). Father's evidence of the income and expenses of his fishing business and his consulting business was his income/expense and asset/debt statements, federal income tax return, and handwritten ledger pages showing income and expenses. The Hearings Officer's Finding of Fact No. 14a. states as follows:

[Father's] gross income is calculated using [Father's] 1992 gross income less necessary 1992 business/operating expenses.[1] [Father's] fishing gross income ($37,594) less necessary business/operation expenses ($64,575.80) is a loss of $26,981.80. [Father's] consulting gross income ($152,-534.87) less necessary business/operation expenses ($75,327.24) is a profit of $77,-207.63. In addition, [Father] had other personal income of $455.85. Also, because of [Father's] acknowledged accounting errors, an additional $3,304 profit is added to [Father's] business income. This leaves a subtotaled annual income of $53,985.68. However, the Elks club initiation fee ($450) and annual fees ($62.50) are not necessary business/operation expenses[2]; this increases [Father's] annual income to $54,498.18. [Father's] gross monthly income for line 1 of the guidelines is $4,542 per month.

[1] The March 15, 1991 child support guidelines (Family Court Memo # 95) provide: "Determine each parent's monthly gross income.... Self-employed individuals should report gross income, less necessary business/operating expenses, i.e. the net profit before taxes." p. 3. CSEA reported that their internal method of calculation is to use the RP's [Responsible Parent's] preceding year's tax return, and to use the business income included on tax schedule "C". However, [Father's] 1992 ledgers were provided showing actual gross income and actual business/operating expenses.

[2] All other expenses listed in [Father's] ledgers are considered necessary business/operating expenses. This includes the $200 per month garage rental, food and entertainment expenses, the unamortized costs of all ship related expenses, and the travel expenses between the Marshall Islands and Hawaii [Hawai'i].

Consideration of amortization, depreciation, fuel tax credits, and [Father's] KEOGH payments are not applicable under this actual expenses analysis.

Mother's gross monthly income was $4,144.00. The Hearings Officer ordered the increase of Father's monthly child support obligation to $710.00 per month.

On appeal to the family court, Father contended that the Hearings Officer incorrectly determined Father's gross monthly income and the amount of his monthly child support obligation when the Hearings Officer used amounts from Father's ledger pages rather than his tax returns and decided that certain amounts Father had deducted as business expenses should not have been deducted.

The Family Court's Order states in relevant part:

3. Absent compelling evidence to the contrary, the Court finds that the hearings officer should have included the expense

amount listed on [Father's] tax return. Thus, the hearings officer erred in decreasing the business/operating expenses of [Father] by $1,270.80 and increasing [Father's] personal income by $455.84 without explanation.

4. The hearings officer erred in finding that the Elks Club initiation fee of $450 was not a necessary business/operating expense as [Father] made a business decision to treat that fee as a business operating expense. As such, the Court finds that [Father] is presumed to have made the proper decision and the evidence did not overcome this presumption.

5. The hearings officer erred in finding that the Elks Club annual fees were not a necessary business/operating expense. [Father] is presumed to have properly made a business decision to treat the annual fees of the Elks Club as a business/operating expense and the evidence did not overcome this presumption.

\* \* \*

7. The hearings officer erred in adding [Father's] depreciation deduction of $11,079 to [Father's] gross income. [Father] is presumed to have made a proper business decision to take the depreciation deduction and the evidence did not overcome this presumption.

\* \* \*

Accordingly, it is ORDERED, ADJUDGED, AND DECREED THAT the administrative decision dated September 29, 1993 is vacated and this matter reversed and remanded to the CSEA for determination consistent with this opinion.

## STANDARD OF REVIEW

■ Our appellate review of a decision made by the family court upon its review of an agency's decision constitutes a secondary appeal. In a secondary appeal, we apply the standards set forth in Hawai'i Revised Statutes (HRS) § 91–14(g) (1993) to the agency's decision and determine whether the family court's decision was right or wrong. HRS § 91–14(g) (1993) provides:

Upon review of the record the court may affirm the decision of the agency or re-

mand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

It is the duty of the trier of fact to assess the weight of the evidence and the credibility of witnesses and "[a]n appellate court will not pass upon issues dependent upon credibility of witnesses and the weight of the evidence; this is the province of the [trier of fact]." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 117, 839 P.2d 10, 28 (1992) (citation omitted).

■ We review an agency's findings of fact under the clearly erroneous standard. *Wailuku Sugar Co. v. Agsalud*, 65 Haw. 146, 148, 648 P.2d 1107, 1110 (1982); HRS § 91–14(g)(5). "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." *State v. Okumura*, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citation and quotation marks omitted).

■ We review an agency's conclusions of law *de novo*, under the right/wrong standard. *Tate v. GTE Hawaiian Tel. Co.*, 77 Hawai'i 100, 102–03, 881 P.2d 1246, 1248–49 (1994) (citation omitted).

## DISCUSSION

### 1.

■ CSEA contends that the family court erred as a matter of law when it ruled in Finding of Fact No. 3 that the Hearings Officer should have used the expense amount listed on Father's tax return. Specifically, CSEA contends that the family court erred when it ruled that the Hearings Officer erred in (A) decreasing the business/operating expense by $1,270.80 and (B) increasing Father's income by $455.84. We agree with CSEA.

### (A)

Pursuant to HRS § 576E–10, hearings officers have the authority to:

(8) Receive testimony from the parties to the hearing and establish a record;

(9) Evaluate the testimony and other evidence received at the hearing and make specific findings of fact and conclusions of law after contested case hearings and when otherwise required by law[.]

Here, the Hearings Officer weighed the evidence and then determined that certain amounts should be included or excluded from Father's gross income. On his tax return, Father listed as his operating expenses for his fishing business the unitemized sum total of $65,845.00. An itemization of these expenses listed on handwritten pages was sent by facsimile to CSEA. These numbers were retyped by Mother and submitted as an exhibit at the hearing. The total of Mother's retyped numbers was $64,575.80. The difference between the two figures for expenses is $1,269.20, which is almost identical to the $1,270.80 amount cited by the family court as the amount erroneously deducted from Father's business operating expenses. Since the Hearings Officer used the $64,575.80 amount in his calculation of Father's gross income from his fishing business, it appears that he found this amount more credible than the amount listed on Father's tax return.

If the family court decided, as a matter of law, that the Hearings Officer was required to use the amount on Father's tax return, it was wrong. If the family court decided, as a matter of law, that the amount on Father's tax return was presumptively correct and that CSEA failed to overcome the presumption, it was wrong. If the family court had a "definite and firm conviction that a mistake [had] been made[,]" we disagree. In our view, the Hearings Officer's findings are not clearly erroneous.

### (B)

■ The family court concluded that the Hearings Officer erred when he added $455.85 to Father's income "without explanation." However, there is evidence in the record to support this finding. Entries in Father's handwritten ledger sheets lists under the heading "For July" the amount of $227.75 and under the heading "Aug In" the amount of $228.35. (The reason the Hearings Officer's total was $455.85 instead of $456.10 was that he used Wife's retyped amount of $227.50 rather than Father's amount of $227.75.)

### 2.

■ CSEA contends that the family court, acting as an appellate court in its review of an administrative agency's decision, impermissibly created a presumption that depreciation and other business expenses claimed by a self-employed father on his tax return should be excluded from his gross income for purposes of calculating child support. We agree.

In the Family Court's Order, the family court decided that "[t]he hearings officer erred in adding [Father's] depreciation deduction of $11,079 to [Father's] gross income. [Father] is presumed to have made a proper business decision to take the depreciation deduction and the evidence did not overcome this presumption." We conclude that no such presumption exists in Hawai'i law and decide that the Hearings Officer did not err.

HRS § 576D–7, as amended by Act 305 (1987), provides that "[t]he Family Court, in consultation with the [Child Support Enforcement] agency, shall establish guidelines to establish the amount of child support when an order for support is sought or being

enforced under this chapter." The ACSG were published pursuant to this authorization.

In order to determine the amount of a child support obligation, it is necessary to determine each parent's gross monthly income. For a parent employed by a business or other entity, this determination is usually accomplished by a review of the pay stub or some other verification by his or her employer as to how much his or her income is each month. For the self-employed parent, however, the amount of his or her gross monthly income is usually more difficult to determine.

To determine the income of a parent who is self-employed, the ACSG state that "self-employed individuals should report gross income, less necessary business/operating expenses, i.e., the net profit *before* taxes." (Emphasis in original.) However, the ACSG give no guidance as to what constitutes "necessary business/operating expenses[,]" leaving the determination of the question to the trier of fact.[1]

Other jurisdictions have concluded that a self-employed parent's business deductions should be carefully scrutinized to avoid the sheltering of income at the expense of lessening income available for child support. They have also recognized that tax returns alone do not always provide an accurate determination of a self-employed parent's income. "It is the disposable income of the parent and not their income tax returns alone, which must be considered by the Court." *Stewart v. Stewart*, 243 Mont. 180, 793 P.2d 813, 814 (1990) (quotation marks and citations omitted).

In *Merrill v. Merrill*, 587 N.E.2d 188, 189 (Ind.Ct.App.1992), the Indiana Court of Appeals acknowledged that a self-employed person has the discretion to defer current income by incurring debt, and there could be a situation in which there would then be very little income to be considered available for determining child support. It noted that income tax returns may be helpful in determining gross income of the self-employed parent,

but that deductions for child support purposes "may differ significantly from those allowed for tax purposes." *Id.* at 190.

Other jurisdictions have also decided that in situations involving child support it is necessary to examine the total financial situation of a self-employed parent, rather than to merely rely on tax returns for a determination of income. *See Pierce v. Pierce*, 268 Ark. 864, 866, 596 S.W.2d 364, 366 (1980) (in determining income of self-employed father for child support, "the tax return alone [was] not an accurate indicator of [the father's] available expendable income"); *Freking v. Freking*, 479 N.W.2d 736, 740 (Minn.Ct.App. 1992) (tax returns not always reliable indication of net income available for child support); *Padilla v. Montano*, 116 N.M. 398, 862 P.2d 1257, 1265 (1993) (in determination of father's gross income for child support, limiting evidence to father's tax returns too restrictive).

█ Thus, in the case of a self-employed parent, there should be careful scrutiny by the agency/courts as to the reasonableness and appropriateness of business decisions that lessen the amount of the income available for child support.

In the instant case, the family court was wrong when it created a presumption of correctness for all business deductions reported by Father on his tax return. The Hearings Officer's findings that certain of Father's alleged business expenses were not "necessary business/operating expenses" are not clearly erroneous.

## CONCLUSION

Accordingly, we reverse the family court's January 6, 1995 Order Vacating Administrative Order of September 29, 1993, and we reinstate the Administrative Order of September 29, 1993.

---

1. In a similar situation, Oregon Revised Statutes 25.290 caused the Oregon Court of Appeals to conclude that "[t]he obligor has the burden of proof and must furnish documentation to sup-

port any offsets claimed." *Gudmundson v. Gudmundson*, 145 Or.App. 135, 929 P.2d 319, 322 (1996). Hawai'i has no similar statute.