118 P.3d 1145

David Masato YASUMURA,
Appellant–Appellant,

v.

**CHILD SUPPORT ENFORCEMENT AGENCY, State of Hawai'i, and Lori Shizuko Yasumura, Appellees–Appellees.**

No. 25395.

Intermediate Court of Appeals of Hawai'i.

May 9, 2005.

R. Steven Geshell, Honolulu, on the briefs, for David Masato Yasumura, Appellant–Appellant.

Lawrence A. Sousie and Mary Anne Magnier, Deputy Attorneys General, on the briefs, for Child Support Enforcement Agency, Appellee–Appellee.

Thomas D. Collins, III, Honolulu, on the briefs, for Lori Shizuko Yasumura, Appellee–Appellee.

BURNS, C.J., FOLEY and FUJISE, JJ.

Opinion of the Court by BURNS, C.J.

Appellant David Masato Yasumura (Father) appeals from the family court's [1] September 18, 2002 Order Affirming in Part, Reversing in Part, and Remanding Administrative Findings and Order Filed on June 14, 2001. On June 14, 2001, the Office of Child Support Hearings (OCSH) issued its Administrative Findings and Order that decided Father's March 2, 2001 request for a decrease in his obligation to pay child support. We vacate in part, affirm in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

Father and Appellee Lori Shizuko Yasumura (Mother) are the parents of a male child (Son), born on August 19, 1978, and a female child (Daughter), born on March 8, 1982. The October 25, 1989 Divorce Decree awarded Father and Mother joint legal custody of Son and Daughter, awarded Father physical custody of Son, awarded Mother physical custody of Daughter, and ordered Father to pay Mother child support for Daughter in the amount of $320.00 per month, commencing November 1, 1989. If Daughter did not continue her education post-high school, Father's obligation would continue "until [Daughter] attains the age of 18 years or graduates from high school or discontinues high school, whichever occurs last." If Daughter continued her education post-high school, Father's obligation would continue "so long as [Daughter] continues her education post-high school on a full-time basis at an accredited college or university, or in a vocational or trade school, or until [Daughter] attains the age of 23 years, whichever occurs first."

The Divorce Decree also stated, in relevant part, as follows:

As joint legal custodians, the parties shall confer on major decisions affecting the children, including, but not limited to, the children's elementary and secondary education, the children's higher education, major medical or dental care required by the children, the children's school and after school activities of note, military service requiring the consent of the parties, and marriage requiring the consent of the parties. Additionally, each party shall keep the other apprised of the children's general health, school progress (i.e.[,] report cards and the like), school activities, after school

1. Judge Frances Q.F. Wong, presiding.

activities, and general whereabouts when the children are with him or her.

Father subsequently married Alice Yasumura (Alice). They have two sons. Father owns A C Systems, Inc., which is in the business of installing air conditioning systems.

On March 2, 2001, six days prior to Daughter's nineteenth birthday, Father asked the Child Support Enforcement Agency (CSEA) for a "modification of the child support obligation to reduce child support because of his inability to make the current $320.00 a month support payments." On April 24, 2001, CSEA issued its Administrative Findings and Order that proposed a reduction of Father's child support obligation to $60.00 per month, commencing May 1, 2001. Mother objected to the proposed reduction and requested a hearing, alleging that "(1) [Father] is under-reporting [his] income; (2) [Father] should have income imputed; and/or (3) [Father's] property should be considered in determining support."

At the May 24, 2001 hearing,[2] CSEA stated, in relevant part, as follows:

[CSEA]: For the purposes of calculating child support using the Child Support Guidelines Work Sheet, [F]ather's income was determined based on 1999 Federal tax returns. And that's summarized in State's Exhibit C.

We totaled the income from the sale of an S corporation of twenty thousand six hundred seventy-four dollars and annuities of fifty-one thousand five hundred and seventeen dollars.

. . . .

And the total of that came out to seventy-two thousand one hundred and ninety-one dollars divided by twelve months for an average monthly income of six thousand sixteen dollars per month.

Mother's income as reported by the Department of Labor averages out to two thousand three hundred and eighty-six dollars per month . . . .

Father pays the medical insurance cost of one hundred and forty-seven dollars per month. So, the Child Support Guideline[s] Work Sheet calculates child support at six hundred and twenty dollars per month.

In her capacity as Father's bookkeeper, Alice testified, in relevant part, as follows:

Q. . . . Can you explain this income from sales of S corporation, twenty thousand six seven four?

A. That amount shouldn't be a sale item. It should be a capital gain to the S corporation.

. . . .

The annuities money is money that was rolled over from the union, the sheet metal's union and it was rolled over into Prudential Securities, I believe. The whole amount was rolled over.

Father and Alice testified, in relevant part, as follows:

[FATHER]: So, I am basically having a hard time getting work and the work that I get I have a hard time turning a profit.

. . . .

HEARINGS OFFICER: Okay. What is your income?

[FATHER]: Almost nothing. You know, basically almost nothing. I made only about fifteen hundred dollars this . . . year so far that . . . we could pay myself for, you know.

[ALICE]: The financial situation of the company is such that in the last two years we have not been able to pay payroll or to have the burden or liability of the payroll taxes so we have not been paying payroll to either one of us.

This year, 2001, we are trying to pay something just so that we can . . . pay the obligation to child support.

It's not much but with all the work that we have and the small profit margins that we have on those jobs we're not making even enough for overhead.

. . . .

[ALICE]: . . . .

. . . It's just a profit and loss statement, '97 to '99, S corp tax returns and our personal tax returns because the S corp flows into our personal so if there's a gain or a loss then we pick it up in our personal tax returns.

---

2. *Hearings Officer Owen K. Tamamoto, presiding.*

However, because of the type of filing that we're required to do by the IRS the income that's reflected on the profit and loss statements is not ... actual because we're on a hundred percent completion basis for contracts.

So, if a contract is not completed within the year then we have to back out that income and add it to the next year.

So, the years are all—the information isn't accurate as far as income goes because of the way we have to report to the IRS.

HEARINGS OFFICER: And so do you have any year 2000 tax returns?

[ALICE]: No. I have not closed my books for 2000. We have an extension. We do not owe any taxes.

. . . .

HEARINGS OFFICER: Okay.

So, [Father], so I understand your position. According to all these documents what are you saying your current income is?

. . . .

[FATHER]: I hope I can make twenty thousand dollars this year.

. . . .

[BY CSEA]

Q. What are you basing the twenty thousand dollars on?

[FATHER]: Contracts that I had going on and a job that I foresee in the future that I may acquire. It's depending on the general contractor.

. . . .

HEARING[S] OFFICER: Okay.

And then on this Line 16A, fifty-one thousand five hundred seventeen dollars. What schedule or where does that number come from?

. . . .

HEARING[S] OFFICER: The total pensions and annuity, Line 16A.

[ALICE]: That was from the sheet metal worker's union. It was an annuity that after five years if you don't contribute to that annuity then it's terminated with the union and therefore, the money was rolled into—...—we didn't receive the money. The money went to Prudential Securities and was put into one of those tax shelter accounts . . . .

. . . .

HEARING[S] OFFICER: What kind of annuity was this?

[ALICE]: It was an annuity that was contributed to when we were at a different company. It was for retirement.

On June 14, 2001, the OCSH issued its Administrative Findings and Order which stated, in relevant part, as follows:

**ADDITIONAL FINDINGS OF FACT:**

1. Father initiated the present administrative proceeding by requesting modification of child support.

2. The Divorce Decree between the parties ordered Father to pay child support in the amount of $320.00 per month commencing November 1, 1989. The child support order has not been amended.

3. Father wholly owns an S corporation, A C Systems, Inc. Father works full-time as the head of A C Systems, Inc. Father had a heart attack and triple by-pass operation in 1997. Since then his current wife, Alice Yasumura, manages the financial aspects of A C Systems, Inc. Father is capable of earning $20,000.00 this year (based upon his testimony.) Father has $51,517.00 (and possibly more) in a retirement annuity account. Father's monthly income to be used on line 11(A) of the guidelines worksheet is $5,917.00.

**Analysis:** Father admitted having a current capacity to earn income of $20,000.00, so this amount may be included in the guidelines calculation. Father also has money available to pay child support in his retirement annuity, after payment of a ten per cent penalty ($51,517.00–$515.00=$51,-002.00.) The fact that this annuity was "rolled over" in 1999 is of no consequence. This asset is available for child support after payment of the penalty whether or not a roll-over occurs. Father's current income capacity may thus be imputed at $51,002.00 plus $20,000.00 per year, or $5,917.00 per month.

. . . .

**ADDITIONAL CONCLUSIONS OF LAW:**

1. Father, the party who requested modification, bears the burden of proving

by a preponderance of the evidence that current child support should be lowered. Father failed to sustain his burden. Instead, the preponderance of the evidence and arguments adduced at the hearing support an increase in child support to $600.00 per month.

**Analysis:** Father's evidence in support of his position consisted primarily of his testimony, the testimony of Alice Yasumura, his pay record for 2001 and his personal and corporate financial statements and tax returns for 1997, 1998, and 1999. Father and Alice Yasumura testified that Father's current income is almost nothing. However, aside from the one pay statement dated April 2, 2001, no other records for the years 2000 and 2001 were produced. Year 2000 personal and corporate tax returns and financial statements were not submitted into evidence. Current financial statements for the year 2001 also were not submitted into evidence. Presumably, Father and Alice Yasumura have complete control over documentation showing, for example, gross income of A C Systems, Inc. Yet, no current records were produced. Alice Yasumura also testified that the documentation submitted by Father is incorrect in key aspects. Stated differently, the documentation produced for past years is suspect and important current documentation is lacking. The evidence produced by Father is insufficient to warrant a reduction in child support. Conversely, the preponderance of the evidence supports an increase in child support.

**CHILD SUPPORT:** [Father] shall pay child support of $600.00 per child per month in the sum total of $600.00 per month. Support shall remain in effect until [Daughter] [is] age 18, or age 23 provided [Daughter] [is] in high school, or enrolled as [a] full-time student or has been accepted into and plans to attend as a full-time student for the next semester to an accredited educational or vocational institution. Child support shall terminate if [Daughter] dies, is adopted, marries or becomes otherwise emancipated.

**TOTAL MONTHLY PAYMENT:** Total monthly payment is $600.00 commencing May 1, 2001.

On July 13, 2001, Father appealed from the OCSH's June 14, 2001 Administrative Findings and Order to the family court. In his appeal, Father argued that (1) the administrative findings and order were wrong and constituted reversible error because Father's ability to pay had been drastically reduced, creating a change of circumstances necessitating a reduction, rather than an increase, in child support; and (2) the administrative findings and order increasing child support constituted reversible error because Father requested a downward modification and he did not receive notice that his child support obligation could increase. For the first time in the case, Father also argued that (3) his child support obligation for Daughter should have terminated because she was now over 18 years old, was no longer in the custody of either of her parents, *Nabarrete v. Nabarrete*, 86 Hawai'i 368 fn. 5, 372, 949 P.2d 208, 212 fn. 5 (1997), and no evidence was presented that she was a full-time student.

On May 2, 2002, Father filed a Motion for Leave to Present Additional Evidence. Specifically, he sought to present evidence of "[t]he 2000 U.S. corporate income tax return for A.C. Systems, Inc.; the 2000 federal and state income tax returns for [Father]; retirement account records and family budget." On June 27, 2002, the family court denied this motion.

On September 18, 2002, the family court entered its Order Affirming in Part, Reversing in Part, and Remanding Administrative Findings and Order filed on June 14, 2001 (the Family Court Order).

This court takes no position on the issue of whether Father's child support should have terminated upon the date of [Daughter's] eighteenth birthday, absent any evidence on record of [Daughter's] educational status.

... The record on appeal is devoid of evidence pertaining to the [CSEA's] prior determination, if any, of continued child support due to [Daughter's] pursuit of post-high school education....

The Court, nonetheless, instructs the [CSEA] in this case to immediately send written notice by mail, if not already done so, to Mother, Father, and [Daughter], of

the requirement that proof of [Daughter's] full-time, post-high school student status must be presented to the [CSEA] for child support to continue. In the alternative, if the [CSEA] ... has made a determination on whether child support continues, pursuant to HRS [Hawaii Revised Statutes] § 576E–14(f), then the Court instructs the [CSEA] to immediately mail a notification of that determination to Mother, Father, and [Daughter].

. . . .

The [CSEA's] determination of child support was based on the finding that Father's total income available to pay child support includes $20,000 per year (that Father admitted he is capable of earning) and his retirement annuity. The Court disagrees that the resulting increase was error, in light of evidence on the record.

First, when asked during cross-examination on what he was basing the $20,000 figure as his current income, Father stated that he had contracts that were pre-existing and contracts that he foresees he will acquire. . . .

Second, [Alice] testified that the $51,517 retirement annuity can be withdrawn, and has in fact been withdrawn from, to pay for expenses. . . . This is evidence that the retirement annuity is available for child support. The 1998 Amended Child Support Guidelines ... states that "[i]f the parent owns assets, he/she may be required to convert all or some portion of said assets for cash for payment of support." ... Hence, the administrative finding that the $51,517 retirement annuity is income available for child support, less 10% penalty for withdrawal, is supported by the record and is not clearly erroneous.

Regarding Father's claim that his due process rights had been violated, the family court stated, "The law requires [CSEA] to follow the [1998 Amended Child Support Guidelines (the 1998 Guidelines) ] in the establishment or modification of child support, pursuant to HRS § 576E–15.[3] [CSEA] notified Father this much in the information with

the notice of hearing mailed to Father." The family court decided that CSEA gave Father sufficient notice that his child support obligation might be "decreased or increased based on the application of the [1998] Guidelines and did not violate Father's due process rights when it determined and ordered an increase in child support pursuant to the [1998] Guidelines, notwithstanding Father's request for a reduction."

The family court also decided that

[t]he Hearings Officer made a finding that the penalty for withdrawal from Father's retirement annuity is 10% of $51,517. Ten per cent of $51,517 correctly amounts to $5,152. On the Administrative Findings and Order, the Hearings Officer erroneously deducted $515 (which is only 1% of $51,517), instead of the correct penalty amount of $5,152, from the retirement annuity. Accordingly, the correct amount of Father's monthly gross income would be $5,530 (calculated as follows: $51,517 retirement annuity—$5,152 withdrawal penalty + $20,000 that Father testified he is capable of earning = $66,365; $66,365 ÷ 12 months = $5,530 per month gross income), not $5,917. The Hearings Officer's finding that Father's monthly gross income amounting to $5,917 is clearly erroneous.

Therefore, the Court reverses the administrative findings of $5,917 as Father's gross income and $600 per month as Father's child support obligation, and remands for recalculation of child support applying the corrected gross income of Father at $5,530 per month.

Father filed a notice of appeal on October 10, 2002. The appeal was assigned to this court on June 13, 2003.

### POINTS ON APPEAL

In his opening brief, Father contends that the family court erred:

1. In failing to rule that his child support obligation terminated when Daughter reached the age of eighteen;

---

**3.** Hawaii Revised Statutes (HRS) § 576E–15 (Supp.2004) states, "When an administrative order establishes or modifies the amount of child support required to be paid by a party, the guidelines established under section 576D–7 shall be applied, except when exceptional circumstances warrant departure. The most current guidelines shall be used to calculate the amount of the child support obligation."

2. In affirming the upward modification of his child support obligation imposed by the administrative findings and order;

3. In holding that his due process rights had not been violated; and

4. In denying his Motion for Leave to Present Additional Evidence.

## STANDARD OF REVIEW

### Administrative Agency Decisions— Secondary Appeals

■ An appellate court's review of a circuit court's review of an administrative agency's decision is a secondary appeal. *Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan*, 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998). In determining whether the circuit court's decision was right or wrong, the appellate court must apply the standards set forth in HRS § 91–14(g) (1993) to the agency's decision. *Id.* HRS § 91–14(g) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

4. HRS § 576E–14(f) (Supp.2004) states as follows:

In those cases where child support payments are to continue due to the adult child's pursuance of education, the [Child Support Enforcement] agency, at least three months prior to the adult child's nineteenth birthday, shall send notice by regular mail to the adult child and the custodial parent that prospective child

■ Pursuant to the above statutory provision, an agency's "conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6)." *Korean Buddhist*, 87 Hawai'i at 229, 953 P.2d at 1327 (internal quotation marks and citation omitted). Furthermore, an "agency's decision carries a presumption of validity and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences." *Id.* (quoting *Bragg v. State Farm Mut. Auto. Ins.*, 81 Hawai'i 302, 304, 916 P.2d 1203, 1205 (1996)).

## DISCUSSION

### A.

### Automatic Termination of Child Support Obligation

■ Daughter had reached the age of 19 by the time of the May 24, 2001 administrative hearing. Father challenges the part of the Family Court Order that states, "The issue of whether Father owes further child support to [Daughter] who has attained age 18 is not reviewable on this appeal, given the lack of pertinent evidence on the record." Father contends that the family court erred by failing to decide that his child support obligation automatically terminated when Daughter reached the age of 18.

We disagree with Father. If Daughter does not continue her education post-high school on a full-time basis, his child support obligation terminates when Daughter "attains the age of 18 years or graduates from high school or discontinues high school, whichever occurs last." There being no evidence that Daughter had graduated from high school or discontinued high school, we agree with the family court's decision.[4]

support will be suspended unless proof is provided by the custodial parent or adult child to the child support enforcement agency, prior to the child's nineteenth birthday, that the child is presently enrolled as a full-time student in school or has been accepted into and plans to attend as a full-time student for the next semester a post-high school university, college or vocational school. If the custodial parent or

## B.

*Modification of Child Support Obligation*

■ Father challenges the following part of the Family Court Order that states, "The [CSEA's] determination of child support was based on the finding that Father's total income available to pay child support includes $20,000 per year (that Father admitted he is capable of earning) and his retirement annuity. The Court disagrees that the resulting increase was error, in light of evidence on the record."

In its formula for calculating child support, the 1998 Guidelines start with "Monthly Gross Income." The 1998 Guidelines state, in relevant part:

> D. GROSS INCOME, as used in these guidelines, worksheets and income tables, includes income from all sources

adult child fails to do so, prospective child support payments may be automatically suspended by the child support enforcement agency upon the child reaching the age of nineteen years. In addition, if applicable, the agency or hearings officer may issue an order terminating existing assignments against the responsible parent's income and income assignment orders.

HRS § 580–47(a) (Supp.2004) states, in relevant part, as follows:

> In those cases where child support payments are to continue due to the adult child's pursuance of education, the [Child Support Enforcement] agency, three months prior to the adult child's nineteenth birthday, shall send notice by regular mail to the adult child and the custodial parent that prospective child support will be suspended unless proof is provided by the custodial parent or adult child to the child support enforcement agency, prior to the child's nineteenth birthday, that the child is presently enrolled as a full-time student in school or has been accepted into and plans to attend as a full-time student for the next semester a post-high school university, college, or vocational school. If the custodial parent or adult child fails to do so, prospective child support payments may be automatically suspended by the child support enforcement agency, hearings officer, or court upon the child reaching the age of nineteen years. In addition, if applicable, the [Child Support Enforcement] agency, hearings officer, or court may issue an order terminating existing assignments against the responsible parent's income and income assignment orders.

HRS § 577–1 (1993) states that "All persons residing in the State, who have attained the age of eighteen years, shall be regarded as of legal age and their period of minority to have ceased." HRS § 583A–102 (Supp.2004) defines "Child" as

that are regular and consistent, including but not limited to:

. . . .

4. Investment and interest income (including dividends);

5. Pension income;

. . . .

7. Annuities;

8. Capital gains, unless nonrecurring;

. . . .

15. Income from self-employment, including rent, royalties, and other benefits allocated to an individual for a business or undertaking in the form of a proprietorship, partnership, joint venture, close corporation, agency, or independent contractor[.]

"an individual who has not attained eighteen years of age." HRS § 587–2 (1993) defines "Child" as "a person who is born alive and is less than eighteen years of age." Thus, a parent of a child who has attained eighteen years of age cannot be that adult child's "custodial parent[.]" It appears that "the custodial parent" referred to by HRS § 576E–14(f) and HRS § 580–47(a) is the parent to whom the child support is being paid and with whom the child is residing.

The cited statutes impose a burden on the Child Support Enforcement Agency (CSEA) to seek proof from the "custodial parent" and the adult child. Both statutes impose on the "custodial parent" and the adult child the burden of proving to the CSEA the adult child's continuing education. When the case is being heard by the Office of Child Support Hearings (OCSH), the CSEA has the burden of proving that it sought the proof as required and the response(s) it did or did not receive.

An adult child and/or the adult child's "custodial parent" who seeks to continue or increase child support payments, has the burden of proving that the adult child is presently enrolled as a full-time student in school has been accepted into and plans to attend as a full-time student for the next semester a post-high school university, college or vocational school.

An adult child's parent seeking to terminate his/her child support obligation does not have the burden of proving that the adult child is not presently enrolled as a full-time student in school or has not been accepted into and does not plan to attend as a full-time student for the next semester a post-high school university, college or vocational school. That burden is imposed on the CSEA, the adult child, and/or the "custodial parent[.]"

Father contends that the OSCH's finding that he admitted he was capable of earning $20,000.00 per year is clearly erroneous. We disagree. In response to the question, "What are you basing the twenty thousand dollars on?" Father responded, "Contracts that I had going on and a job that I foresee in the future that I may acquire. It's depending on the general contractor." The hearings officer translated the "may acquire" language in Father's response into "is capable of earning[.]" In light of the record, we affirm this translation.

■ Father also contends that the finding that his retirement annuity fund is "gross income" as defined in the 1998 Guidelines is clearly erroneous. In support of this contention, Father notes that he did not receive the retirement annuity fund directly in cash.

We conclude that Father's retirement annuity fund is not "income" under the 1998 Guidelines. Father's retirement annuity fund is the total of the income Father earned in prior years that Father saved for future retirement. When he earned the money, it was income. When he saved the money in the retirement annuity fund, it became principal. Expressly, the 1998 Guidelines include within "Gross Income" only such "Pension income" and "Annuities" that are "regular and consistent". Father's retirement fund is not a "regular and consistent" "Gross Income." He does not receive an annual income of $46,365.00 ($51,517.00—$5,152.00) from his retirement annuity fund. Therefore, under the 1998 Guidelines, it was wrong to include the amount of Father's retirement annuity fund within his gross income.

■ Both CSEA and Mother argue that Father's assets should be considered in calculating his child support obligation. They cite the section of the 1998 Guidelines that states, "Assets for payment of support may be applied when a parent has inadequate income to meet his/her child support obligation. If the parent owns assets, he/she may be required to convert all or some of said assets to cash for payment of support."

We conclude that the 1998 Guidelines specify that: (1) absent proof of exceptional circumstances, it is regular and consistent income, rather than assets or principal, that is used to determine the amount of the child

support obligation; and (2) a parent may be required to liquidate his or her assets to satisfy a child support obligation. Unless and until Mother satisfies her burden of proving the applicability of (1) above, the possibilities presented by (2) above are not relevant.

## C.

### Due Process Rights

■ Father contends that the family court erred by not holding that CSEA violated his due process rights when it did not notify him prior to the May 24, 2001 administrative hearing that the issue "was to increase his child support[.]" This contention assumes that Father had a due process right to be so notified. We disagree with this assumption.

HRS § 576E–15 (Supp.2004) states that "[w]hen an administrative order establishes or modifies the amount of child support required to be paid by a party, the guidelines established under section 576D–7 shall be applied, except when exceptional circumstances warrant departure. The most current guidelines shall be used to calculate the amount of the child support obligation." This statute informed Father that, absent exceptional circumstances, the hearings officer would be bound by the amount calculated in accordance with the 1998 Guidelines.

Even assuming Father had a due process right to be so notified, we conclude that his right was satisfied. The Family Court Order states in relevant part:

Father contends that the notice of hearing from [CSEA] did not indicate that the administrative hearing would involve anything other than his request for downward modification (i.e., reduction) of the child support order. On his reply brief, Father asserts that nothing in the record shows Father was informed by the Hearings Officer nor [CSEA] that the latter would have the power to increase child support when Father was asking for a decrease in the child support. . . .

By his argument, Father appears to imply that [CSEA], in determining child support modification requests, is limited to either modifying in the direction as re-

quested or refraining from making modification altogether. Father's argument lacks support from the law nor the evidence on record. The law requires [CSEA] to follow the [1998 Amended Child Support Guidelines] in the establishment or modification of child support, pursuant to HRS § 576E–15. [CSEA] notified Father this much in the information with the notice of hearing mailed to Father.

The "information" referred to in the Family Court Order is a General Information Sheet that accompanied the Notice of Hearing mailed to Father. The General Information Sheet states in relevant part:

> Child support is calculated using the most current version of the Hawai'i Child Support Guidelines Worksheet ("CSGW"). The CSGW provides a mathematical formula which uses the gross incomes from both parents to determine the amount of monthly child support. Unless a party is able to prove the existence of exceptional circumstances, the hearings officer must enter an order for child support in the amount calculated by the CSGW.

Given that Father was aware that the purpose of the administrative hearing was the modification of his child support obligation and that, absent exceptional circumstances, the hearings officer would be bound by the amount calculated by the CSGW, we agree with the family court's conclusion that "[t]his information is sufficient notice to Father that child support amount may be reduced, as he had requested, or it may be increased, as calculated using the [1998 Guidelines] worksheet."

### D.

#### *Motion for Leave to Present Additional Evidence*

■ Father contends that the family court erred by denying his Motion for Leave to Present Additional Evidence. We disagree.

In *Kilauea Neighborhood Ass'n v. Land Use Comm'n*, 7 Haw.App. 227, 751 P.2d 1031 (1988), this court held that it is within the discretion of a trial court to reject additional evidence presented to the court pursuant to HRS § 91–14(e).[5] More specifically, this court held:

> Under HRS § 91–14(e), the court may order that "additional evidence be taken before the agency upon such conditions as the court deems proper;" however, the court is not obligated to do so. The decision is purely discretionary. We find no abuse of discretion in the lower court's refusal to grant Kilauea's motion.

7 Haw.App. at 236, 751 P.2d at 1037 (citation, brackets, and footnote omitted).

In its Findings of Fact, Conclusions of Law, and Order Denying [Father's] Motion for Leave to Present Additional Evidence, the family court stated in relevant part:

#### *CONCLUSIONS OF LAW*

. . . .

3. [Father] failed to carry his burden of showing good cause for failing to present the additional evidence before the agency.

4. [Father's] evidence was not well developed in that tax returns are not presumptive evidence of a self-employed parent's income for child support purposes. *John Doe v. CSEA*, 87 [Hawai'i] 178, 953 P.2d 209 (1998). The remaining additional evidence [Father] sought to introduce would have little bearing on his gross income.

5. While the court is conscious that [Father] represented himself before the agency, the court is also duty bound to be fair to both parties.

6. [Father] having failed to show good cause for failing to present evidence before the agency, and the additional evidence not

---

5. HRS § 91–14 (1993) states in relevant part:

(e) If, before the date set for hearing, application is made to the court for leave to present additional evidence material to the issue in the case, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon such conditions as the court deems proper. The agency may modify its findings, decision, and order by reason of the additional evidence and shall file with the reviewing court, to become a part of the record, the additional evidence, together with any modifications or new findings or decision.

being conclusive proof of his gross income, the court may, in its discretion, deny the motion and requested relief prayed for by [Father].

Clearly, it was not "shown to the satisfaction" of the family court "that there were good reasons for [Father's] failure to present ... in the proceeding before the agency" the additional evidence Father sought to introduce.

## CONCLUSION

The following parts of the family court's September 18, 2002 Order Affirming in Part, Reversing in Part, and Remanding Administrative Findings and Order Filed on June 14, 2001 are vacated:

The [CSEA's] determination of child support was based on the finding that Father's total income available to pay child support includes $20,000 per year (that Father admitted he is capable of earning) and his retirement annuity. The Court disagrees that the resulting increase was error, in light of evidence on the record.

. . . .

Second, [Alice] testified that the $51,517 retirement annuity can be withdrawn, and has in fact been withdrawn from, to pay for expenses. . . . This is evidence that the retirement annuity is available for child support. The 1998 Amended Child Support Guidelines ... states that "[i]f the parent owns assets, he/she may be required to convert all or some portion of said assets for cash for payment of support." ... Hence, the administrative finding that the $51,517 retirement annuity is income available for child support, less 10% penalty for withdrawal, is supported by the record and is not clearly erroneous.

Except as stated above, the September 18, 2002 Order Affirming in Part, Reversing in Part, and Remanding Administrative Findings and Order Filed on June 14, 2001 is affirmed.

We remand this matter to the Family Court of the First Circuit for further proceedings consistent with this opinion.