Filed 7/21/20

### <u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of JESSICA R. and MARTIN H. HEIN. | |
| JESSICA R. HEIN,<br><br>  Appellant,<br><br>  v.<br><br>MARTIN H. HEIN,<br><br>  Respondent. | F076581<br><br>(Super. Ct. No. S1501FL586657)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Stephen D. Schuett, Judge.

Law Offices of Ira L. Stoker and Ira L. Stoker for Appellant.

Ribet & Silver, Claudia Ribet, Elizabeth Skorcz; Edward J. Thomas and Jeffrey A. Travis for Respondent.

-ooOoo-

This appeal raises issues about a self-employed parent's annual gross income for purposes of determining child support under the statewide guideline. The mother contends the trial court did not properly determine the father's annual gross income under

---

\*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IV. and V. of the Discussion.

Family Code section 4058[1] and, thus, erred in calculating the amount of child support owed. First, the trial court allowed the depreciation deductions claimed on the federal income tax returns of the father and his corporations to reduce his income available for child support. Second, the court presumed the income and expenses reported on the father's individual and corporate tax returns were correct and, thus, assigned the mother the burden of proving the reported amounts were incorrect.

After the trial court issued its decision, we decided the question of statutory construction involving depreciation. (*In re Marriage of Rodriguez* (2018) 23 Cal.App.5th 625, 635 (*Rodriguez*).) We concluded a self-employed parent's depreciation deductions for motor vehicles did not constitute "expenditures required for the operation of the business" for purposes of section 4058, subdivision (a)(2). We now extend that statutory interpretation from motor vehicles to depreciation deductions for equipment and other assets used in the self-employed parent's businesses. The term "expenditure" describes an actual outlay of cash. Claiming a depreciation deduction on an income tax return does not require an outlay of cash and, thus, does not reduce the funds available for child support.[2]

On the question of the burden of proof and the rebuttable presumption that the gross income stated on a parent's tax returns is correct, we conclude such a presumption, if it exists, does not extend to the tax returns in this case. Here, the self-employed father's businesses are organized into two wholly owned corporations (one taxpaying entity and one flow-through entity), the corporations' operations are intertwined, and

---

[1]     All unlabeled statutory references are to the Family Code.

[2]     The parties have not briefed, and we do not address, whether the money a business spends acquiring a capital asset, such as the $500,000 used to purchase a Cessna airplane, might qualify as an "expenditure required for the operation of the business." (§ 4058, subd. (a)(2).) Also, we do not address whether an acquisition of a capital asset could constitute "special circumstances" or whether increased value or depreciation of a capital asset could constitute "special circumstances." (§§ 4052, 4057, subd. (b)(5).)

2.

their total assets exceed $5 million. In such circumstances, we conclude the burden of proving that the expenses claimed on the tax returns constitute "expenditures required for the operation of the business[es]" is properly allocated to the self-employed parent who controls the corporations.

We therefore reverse the trial court's order denying the request to modify child support and remand for further proceedings to determine the father's income available for child support.

## FACTS

Appellant Jessica Hein, now known as Jessica Llach (Jessica), filed a petition for dissolution of her marriage with respondent Martin Hein (Martin) in May 2003. A judgment of dissolution of marriage was filed in November 2004. At the time, both of their daughters were minors. Initially, physical and legal custody of their daughters was divided equally among the parties and neither parent paid child support. The youngest daughter was born in the spring of 1999. As a result, both daughters were adults when the notice of appeal in this case was filed in October 2017.

Jessica has a Ph.D. in physical therapy and, at the time relevant to this proceeding, worked as a self-employed physical therapist three days a week. The parties stipulated that Jessica's income was $9,086 per month, which included $7,172 per month in wages and salary and $1,914 in self-employment income.

Martin is a self-employed farm owner and manager and has been licensed as a commercial pilot for over 20 years. He is the sole shareholder and president of Hein Ranch Company (HRC) and Martin Hein Ranch Company (MHRC). The parties stipulated that Martin's average wages and salary for 2013 and 2014, as reflected on his personal income tax returns, was $7,760 per month, not including any contributions to a pension plan or employee benefits. The parties disagreed about the amount of additional income that should be included in his net disposable income for purposes of calculating child support.

3.

*Martin's Corporations*

Through HRC, Martin owns four ranches, which total 110 acres. Martin testified that HRC did not have any employees that he was aware of, other than himself.

HRC is a C corporation with a fiscal year ending June 30th. As a C corporation, HRC pays income tax. HRC's federal income tax returns on Form 1120 (U.S. Corporation Income Tax Return) for 2010 through 2013 were introduced into evidence. HRC's gross receipts or sales for fiscal years 2011 through 2013 were reported as $4.18 million, $4.14 million, and $4.34 million. For those fiscal years, the total depreciation claimed by HRC on line 20 of its Form 1120 was $971,894, $747,193, and $701,870. The taxable income HRC reported on Line 30 for those years was a loss of $47,658, $0, and a gain of $152,678.[3] At the end of HRC's 2013 fiscal year (i.e., June 30, 2014), its total assets were $3,387,982 and its retained earnings were $1,736,522. HRC had no loans from its shareholder, Martin.

MHRC is a subchapter S corporation[4] formed on October 31, 2008. MHRC provides farm management services for the ranches owned by HRC and for properties owned by third parties. Martin estimated that MHRC manages more than 6,000 acres of trees and vines. MHRC does not handle annual row crops. The services provided include planting, pruning, irrigation, fertilizing, pest control, and harvesting. Martin described the services provided as everything required from farm to table. MHRC's

---

[3] To illustrate the difference between taxable income and net income for accounting purposes, HRC's 2013 Schedule M-1, "Reconciliation of Income (Loss) per Books With Income per Return," listed net income per books of $431,007, which is approximately 2.8 times larger than its 2013 taxable income.

[4] An S corporation, like a partnership, does not pay income taxes. (*Heller v. Franchise Tax Bd.* (1994) 21 Cal.App.4th 1730, 1733 [tax treatment of S corporations]; *Valentino v. Franchise Tax Bd.* (2001) 87 Cal.App.4th 1284, 1287.) Instead, its income and losses are "'passed through'" on a pro rata basis to its shareholders, who report those items on their personal tax returns. (*Heller*, *supra*, at p. 1733.)

employees include 22 general labor workers and four office staff. It also obtains workers through labor contractors.

The workers are paid by HRC, which bills MHRC for the cost. MHRC reimburses HRC and charges the labor costs to the accounts of its clients. Money from the client accounts goes to MHRC, reimbursing it for the cost of the labor.

MHRC's income is reported by Martin by attaching Schedule E to his federal income tax return on Form 1040. For the years 2011 through 2013, Martin reported S corporation income from MHRC of $20,758, $122,268 and $178,846. For those years, MHRC took depreciation deductions of $58,769, $6,037, and $265,922.[5] At the end of 2013, MHRC's total assets were $2,137,227, its retained earnings were $491,500, and its liabilities included loans from Martin totaling $424,349.[6]

*Martin's Other Income Sources*

Martin owns interests in other companies and real estate. The details of those companies and properties is not essential to the resolution of the legal issues presented in this appeal and, therefore, those details are omitted from this opinion. In addition, specific information about various expenses that provided a personal benefit to Martin or one of the daughters, such as flying lessons for the daughter, vacations, and trips need not be described because those details are not relevant to determining whether the legal issues relating to the burden of proof and the application of subdivision (a)(3) of section 4058 to those benefits.

---

[5]    This significant increase in the amount of depreciation claimed relates to MHRC's purchase of a Cessna airplane in 2013 for $500,000. Martin testified the Cessna replaced a plane his companies had had for 20 years. Martin's business manages properties in five different counties and the plane is used to fly to airports near the properties. In his testimony, Martin listed 14 different airports used.

[6]    These loans totaled $198,392 at the end of 2012. Whether the $225,957 increase in the amount loaned to MHRC is related to the purchase of the Cessna airplane in 2013 was not addressed by the parties. (See fn. 11, *post*.)

# PROCEEDINGS

On February 28, 2014, Jessica filed a request for order for modification of child custody, child support and for attorney fees and costs.

The trial on the child support issue was held in August (four days), September (one day), and December (3 days) of 2016. In January 2017, Jessica filed her written closing argument. Martin's response and Jessica's reply were filed in February.

On May 18, 2017, the trial court issued a 16-page written ruling on Jessica's request for an order modifying child support.[7] The court determined the depreciation deductions taken by HRC and MHRC were an appropriate offset to gross income. The court also determined the federal income tax returns of Martin and his corporations were presumed correct and Jessica bore the burden of proving the tax returns were incorrect. The court concluded Jessica failed to carry that burden on many of her challenges to business expenses reported on the tax returns. Based on its determination of Martin's income, the court determined the guideline child support Martin was required to pay for three periods[8] from March 1, 2014, until the youngest daughter reached the age of majority. That date had passed by the time the court issued its statement of decision.

The statement of decision addressed and rejected Jessica's request for attorney fees. Based on its determination of Martin's and Jessica's income for purposes of child support, the court found "there is not a disparity in income that would justify the award of attorney's fees." Lastly, the statement of decision directed Jessica "to prepare an order for signature by the Court."

---

[7]    Section 3654 states: "At the request of either party, an order modifying, terminating, or setting aside a support order shall include a statement of decision." Based on this provision, we refer to the written ruling as a statement of decision.

[8]    DissoMaster reports showing the court's calculation of child support for the three periods were attached to the statement of decision.

On September 29, 2017, the trial court filed "Findings and Order After Hearing" on Judicial Council form FL-340, which attached the DissoMaster reports and a two-page summary of the rulings on child support and attorney fees. The findings and order after hearing was signed pursuant to Code of Civil Procedure section 635 by a judge who did not issue the statement of decision. Jessica filed a timely notice of appeal.

## DISCUSSION

I.      BASIC PRINCIPLES OF CHILD SUPPORT

A.      Family Code Provisions

1.      *Statewide Child Support Guideline*

Child support awards in California are governed by the legislation that established a statewide uniform child support guideline. (See §§ 4050–4076.) "The court shall adhere to the statewide uniform guideline and may depart from the guideline only in the special circumstances" identified in the statute. (§ 4052.) The child support guideline is an algebraic formula set forth in section 4055. The amount generated by the formula "is intended to be presumptively correct in all cases, and only under special circumstances should child support orders fall below the child support mandated by the guideline formula." (§ 4053, subd. (k); see § 4057, subd. (a).) The presumption "affect[s] the burden of proof" and may be rebutted with evidence of the factors set forth in section 4057, subdivision (b).

2.      *Underlying Principles*

When implementing the child support guideline, courts must follow the principles set forth by the Legislature in section 4053. "The guideline seeks to place the interests of children as the state's top priority." (§ 4053, subd. (e).) "A parent's first and principal obligation is to support the parent's minor children according to the parent's circumstances and station in life." (§ 4053, subd. (a).) "Each parent should pay for the support of the children according to the parent's ability." (§ 4053, subd. (d).) "Children

7.

should share in the standard of living of both parents.  Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children."  (§ 4053, subd. (f).)

### 3.    *Parental Income Available for Support*

An important component of the formula used in the statewide uniform guideline for determining child support is the "total *net monthly disposable income* of both parties." (§ 4055, subd. (b)(1)(E), italics added.)  Monthly net disposable income is usually computed by dividing the parent's *annual net disposable income* by 12.  "The annual net disposable income of each parent shall be computed by deducting from his or her *annual gross income* the actual amounts attributable to" items listed in the statute.  (§ 4059, italics added.)  Those deductions include (1) state and federal income tax liability, (2) contributions to the Federal Insurance Contributions Act (FICA), (3) amounts paid for retirement benefits if participation is required as a condition of employment, (4) health insurance or health plan premiums for the parent or any children the parent is obligated to support, (5) spousal or other child support actually being paid, and (6) certain job-related expenses.  (§ 4059, subds. (a)–(f).)

Section 4058 defines a parent's "annual gross income" to mean income from whatever source derived, except child support payments actually received and income derived from any need-based, public assistance program.  (§ 4058, subds. (a), (c).)  The nonexclusive statutory list of income sources includes compensation in the form of salaries, wages, and bonuses.  (§ 4058, subd. (a)(1).)  It also includes investment income such as rent, dividends and interest.  (§ 4058, subd. (a)(1).)  The income generated by a parent's ownership of a business is included pursuant to subdivision (a)(2) of section 4058, which provides:  "Income from the proprietorship of a business, such as *gross receipts from the business reduced by expenditures required for the operation of the business.*"  (§ 4058, subd. (a)(2), italics added.)  Besides the money from a business's

8.

gross receipts less required operating expenditures, a business owner might receive other things of economic value through the business. Subdivision (a)(3) of section 4058 addresses such items by providing that income includes, "[i]n the discretion of the court, employee benefits or *self-employment benefits*, taking into consideration the benefit to the employee, any corresponding reduction in living expenses, and other relevant facts." (Italics added.) In this case, Jessica's arguments about Martin's income available for child support pertain to his ownership (i.e., proprietorship) of his businesses and, therefore, involve the application of paragraphs (2) and (3) of subdivision (a) of section 4058.

### 4. *Modification of Child Support*

Section 3651, subdivision (a) provides that, subject to certain exceptions, "a support order may be modified or terminated at any time as the court determines to be necessary." The party seeking to modify a child support order usually must show there has been a material change in circumstances since entry of the last support order. (*In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1303 (*Bardzik*).) In determining whether a material change has occurred, the first step often involves applying the statewide uniform guideline to the parent's current financial circumstances. (See *In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1013, 1015 [overriding issue is whether a change has affected either party's financial status].) Thus, an increase or decrease in either parent's income available for child support will affect the guideline amount of child support and, thus, may constitute a material change in circumstances justifying a modification of child support. (See *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556.) Where the statewide statutory formula for child support is being met, the next step in determining whether a material change has occurred " 'is made on a case-by-case basis and may properly rest on fluctuations in *need* or *ability to pay*.' " (*Ibid.*) The present appeal involves only issues relating to the computation of guideline

child support and does not reach the other grounds for modification (i.e., need or ability to pay).

The effective date of a modification is addressed by subdivision (c)(1) of section 3651, which provides that, generally, "a support order may not be modified or terminated as to an amount that accrued before the date of the filing the notice of motion or order to show cause to modify or terminate." Section 3652 provides that an order modifying a support order "may include an award of attorney's fees and court costs to the prevailing party."

### B. Standard of Review

Appellate courts review child support awards for an abuse of discretion. (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1038 (*Morton*).) The abuse of discretion standard also applies to a trial court's determination to grant or deny a request to modify child support. (*In re Marriage of Drake* (2015) 241 Cal.App.4th 934, 939.) When conducting an abuse of discretion review, appellate courts consider (1) whether the trial court's factual findings are supported by substantial evidence, (2) whether the trial court followed applicable legal principles, and (3) whether the trial court reasonably exercised its discretionary authority—that is, whether any judge reasonably could have made such an order. (*Morton*, *supra*, at p. 1039; see *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711 ["abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review"].) Child support awards are highly regulated by the statewide uniform guideline (§ 4055) and, as a

result, the only discretion trial courts possess is the discretion provided by statute or rule. (*Morton*, *supra*, at p. 1039.)

II.     DEPRECIATION DEDUCTIONS

        A.      Jessica's Contention

Jessica contends the trial court abused its discretion by failing to include depreciation deductions claimed on the HRC and MRCH income tax returns in the funds available to Martin for child support.  In her view, the depreciation deductions claimed do not constitute "expenditures required for the operation of the business" for purposes of subdivision (a)(2) of section 4058.  She supports this view by referring to the statutory interpretation adopted in *Asfaw v. Woldberhan* (2007) 147 Cal.App.4th 1407 (*Asfaw*).  In *Asfaw*, the court considered the statutory text and concluded that depreciation of rental property may not be deducted from annual gross income when calculating child support.[9] (*Asfaw*, *supra*, at p. 1425.)

        B.      Trial Court's Decision

The trial court's statement of decision acknowledged Jessica's argument "that the Court should 'back out' certain claims for depreciation made on the corporate returns and attribute that as income available for support" and her reliance of *Asfaw* to support this treatment of depreciation.  The court noted the depreciation deduction in *Asfaw* related to rental real estate and the present case involved deductions for the purchase of vehicles and equipment.  The court stated that Jessica "has not cited, nor has the Court found[,]

---

**9**      In comparison, an Illinois appellate court interpreted that state's child support statute to allow the deduction of straight-line depreciation of rental property from a parent's income where the parent showed the depreciation deduction was a reasonable and necessary expense for the production of income.  (*Posey v. Tate* (1995) 275 Ill.App.3d 822, 827 [656 N.E.2d 222].)  There are a variety of approaches for handling depreciation when calculating child support income.  (See Owens, *Determining Self-Employment Income for Child Support Purposes: The Massachusetts View Compared with the National View* (2011) 16 Suffolk J. Trial & App. Advoc. 171, 191, fn. 112 [cases from seven jurisdictions addressing depreciation] (*Owens*).)

any subsequent California decision[] that expands the holding of *Asfaw* beyond the specific facts of that case."**10**  The trial court stated the decision in *Asfaw* impliedly recognized the distinction between real property depreciation and equipment depreciation.  The court explained the importance of this distinction:

> "Simply stated, the deduction of depreciation for equipment and vehicles is the recognition of an actual expenditure made by the tax payer.  While the deduction of the depreciation over the useful life of the asset allows the 'smoothing' of the expense it nevertheless represents an actual payment of money by the taxpayer.  For these reasons, the Court declines to expand the holding of *Asfaw* to this case."

Accordingly, the trial court rejected Jessica's argument that the depreciation deductions were not "expenditures required for the operation of the business" for purposes of subdivision (a)(2) of section 4058.

### C.     Case Law

#### 1.     *Asfaw's Statutory Interpretation*

In *Asfaw*, the Second District determined that whether depreciation was deductible in calculating a parent's net disposable income was a question of statutory interpretation and "the relevant statutes are silent on the treatment of depreciation."  (*Asfaw*, *supra*, 147 Cal.App.4th at pp. 1416–1417.)  The court turned to the legislative history of sections 4058 and 4059, set forth a detailed description of that history, and found it helpful, but not conclusive.  (*Asfaw*, *supra*, at pp. 1417–1421.)  Next, the court considered the question in the context of the statutory framework as a whole, which included provisions of the Welfare and Institutions Code and the California Code of Regulations.  (*Asfaw, supra,* at pp. 1421–1422.)  The court also discussed the treatment of depreciation in calculating child support in other states, which cover the spectrum from allowing to completely disallowing depreciation as a deduction from a parent's income, with many

---

**10**     The court's May 2017 written ruling was issued before our April 2018 opinion in *Rodriguez, supra,* 23 Cal.App.5th 625 addressed the depreciation of motor vehicles.

variations in between. (*Id*. at pp. 1422–1425; see Annot., *Treatment Of Depreciation Expenses Claimed For Tax Or Accounting Purposes In Determining Ability To Pay Child Or Spousal Support* (1995) 28 A.L.R.5th 46.) The Second District concluded that, given the varied treatment of depreciation in other jurisdictions, "case law is of only marginal assistance." (*Asfaw*, *supra*, at p. 1425.)

Ultimately, the Second District held "that depreciation of rental property is not deductible in calculating child support under sections 4058 and 4059" (*Asfaw, supra,* 147 Cal.App.4th at p. 1425) and provided the following summary of its rationale:

> "First, although 'income' is broadly defined in the statutory child support scheme [citation], deduction provisions are specific and narrowly construed. [Citation.] We find the Legislature's choice of the words 'expenditures[],' 'required,' and 'operation of the business' in section 4058 are words of limitation. 'Expenditure' suggests an actual outlay of cash or other consideration. Depreciating an asset does not involve a reduction of cash available for child support. Nor is depreciation 'required' for the operation of a business. A proprietor cannot operate a business without inventory, without employees, without paying taxes, and so forth. A business can be conducted without a deduction for depreciation. We conclude that 'operation of the business' means ordinary and necessary business expenditures directly related to or associated with the active, day-to-day conduct of a business. [Citations.] Depreciation of a business asset, by its very nature, is not essential to the day-to-day running of the business, but is intended to promote the continuity of the business over a longer term. [Fn. omitted.]

> "Second, as recognized by several other jurisdictions, depreciation is a fictional loss that, in the real world represents tax savings and, therefore, additional cash available to the parent to meet child support obligations.

> "Third, the policies identified by our statutes favor the construction we place on sections 4058 and 4059. The overriding policy of the statutory formula is to place the interests of children 'as the state's top priority.' (§ 4053, subd. (e).) Thus, a parent's principal obligation is to support his or her minor children according to his or her circumstances and ability to pay in order to improve the lives of the children. [Citations.] Simply put, these policies are at odds with a child's receiving less financial support from a party who is permitted under tax laws and accounting principles to take a

deduction that does not reduce funds available for support." (*Asfaw*, *supra*, at pp. 1425–1426.)

The Second District expressly limited its statutory interpretation to depreciation deductions from rental income, stating it did not consider "other types of depreciation, such as for equipment." (*Asfaw*, *supra*, 147 Cal.App.4th at p. 1426, fn. 12.) In addition, the court did not consider whether depreciation of an asset could be considered "special circumstances" under sections 4052 or 4057, subdivision (b)(5). (*Asfaw, supra,* at p.. 1426, fn. 12.)

### 2.  *Rodriguez and Fifth District's Approach to Depreciation*

In April 2018, this court addressed the propriety of deducting depreciation of motor vehicles from the income available for child support. (*Rodriguez*, *supra*, 23 Cal.App.5th at pp. 634–635.) In *Rodriguez*, the father (an attorney in a solo practice) asserted his income available for child support should be reduced by various business expenses or deductions, including depreciation of his motor vehicles. (*Id.* at pp. 629–630 [vehicle depreciation averaged $536 per month].) The trial court did not allow the father to subtract depreciation from his business income; instead, the claimed depreciation was added to the income he had available for child support. (*Id*. at pp. 631, 633.)

The father appealed, arguing the trial court committed legal error in disallowing a depreciation deduction when calculating his annual gross income. (*Rodriguez*, *supra*, 23 Cal.App.5th at p. 634.) He argued *Asfaw* was distinguishable because *Asfaw* addressed depreciation of income-generating rental real estate and he sought depreciation of motor vehicles. (*Rodriguez, supra,* at p. 635.) After considering the father's arguments, we stated he had "failed to demonstrate that the principles set forth in *Asfaw* would not apply here simply because a different type of depreciable asset was involved." (*Ibid*.) In addition, we did not "see any material difference between the two types of depreciation for purposes of the issue before us" because the vehicle depreciation claimed did not actually reduce the parent's business income available for child support. (*Ibid*.) As a

result, we concluded the trial court correctly disallowed the father's depreciation deduction.  (*Ibid.*)

D.     Depreciation Deducted by Martin and His Corporations

The statutory interpretation adopted in *Rodriguez* for deducting motor vehicle depreciation appears to apply to the equipment, vehicles and Cessna airplane at issue in this case.  The parties' appellate briefing, however, does not address how this court's interpretation and application of section 4058 to depreciation in *Rodriguez* affects depreciation deductions claims by Martin and his corporations.  Rather, Martin's brief quotes the trial court's statement that Jessica did not cite, and the trial court did not find, any subsequent California decision expanding the holding of *Asfaw* beyond the specific facts of that case.

Although Martin's counsel attempted to distinguish *Rodriguez* during oral argument, she has not persuaded us that subdivision (a)(2) of section 4058 should be construed differently depending on whether the depreciation relates to rental real estate or to vehicles and equipment.  Furthermore, we have not identified any reason to deviate from our analysis and decision in *Rodriguez.*  (See generally, 2 Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2020) ¶¶ 6:246.11-6:246.12, p. 6-178.)  Thus, we continue to interpret "expenditure," as used in subdivision (a)(2) of section 4058, to mean the actual outlay of cash or other consideration.  (*Rodriguez, supra,* 23 Cal.App.5th at p. 634, quoting *Asfaw, supra,* 147 Cal.App.4th at p. 1425.)  In addition, we continue in the view that depreciating an asset on a company's books and claiming a depreciation deduction on federal income tax returns does not involve an outlay of cash with a corresponding reduction of cash available for child support.  (*Ibid.*)  Stated from another perspective, we do not conflate (1) the outlay of money used to purchase a capital asset (i.e., a capital cost or expenditure) with (2) the accounting entries, such as depreciation, that occur after the acquisition of the asset and do not involve the actual

outlay of funds in future years. (See *Owens*, *supra*, 16 Suffolk J. Trial & App. Advoc. at p. 195 ["a tax deduction for depreciation does not represent an out-of-pocket expense in the years following a capital purchase"].)[11]

Consequently, we conclude the interpretation of section 4058, subdivision (a)(2) adopted in *Asfaw* and *Rodriguez* should be applied to the depreciation deductions involved in calculating the income Martin had available for child support. These deductions include expenses under Internal Revenue Code section 179 (26 U.S.C. § 179). That federal tax provision authorizes a taxpayer to elect to treat the cost of acquiring certain business assets as a cost (i.e., a current deduction) rather than depreciating that cost over the life of the asset. (See 16 C.F.R. §§ 1.179-1 to 1.179-6; *Morton*, *supra*, 27 Cal.App.5th at p. 1034, fn. 6.) Internal Revenue Service Schedule F (Form 1040) lists depreciation and Internal Revenue Code (IRC) section 179 expense together under line 16 in part II of that form. Also, a taxpayer's election to expense certain property under

---

**11** One case that treats outlays made to acquire capital assets as distinct from subsequent depreciation deductions relating to the asset is *Christl v. Swanson* (2001) 2001 N.D. 98, [626 N.W.2d 690]. In that case, the North Dakota Supreme Court determined the trial court did not abuse its discretion in calculating a farmer's self-employed income for the relevant years by using the adjusted gross income on his federal income tax returns, adding to it the allowed depreciation, and subtracting the farmer's out-of-pocket capital expenditures for business assets for each of the years. (*Id*. at p. 692)

We note that another complicating factor involving the acquisition of a capital asset occurs when debt is incurred to a third party to finance the purchase. (See *Rauch v. Rauch* (Neb. 1999) 590 N.W.2d 170, 175 ["unfair for [the father] to benefit from his choice to incur debt and build equity in his farm at the expense of his children"].) This appeal does not appear to involve this factor because the appellate briefing in this case does not discuss "whether business income used to pay down business debt should be included in or excluded from income available for support." (See *In re Marriage of Deluca* (2020) 45 Cal.App.5th 184, 195.)

Should the Legislature attempt to clarify a parent's income from the proprietorship of a business, greater clarity would be achieved if, in addition to addressing the treatment of depreciation, the subjects of (1) capital expenditures and (2) principal payments on third party debt used to acquire a capital asset were addressed.

IRC section 179 is made by completing part I of Internal Revenue Service Form 4562, "Depreciation and Amortization." Accordingly, under the current state of California law, it is appropriate to treat IRC section 179 expenses like depreciation for purposes of calculating child support. (See *Gase v. Gase* (2003) 266 Neb. 975, 985 [671 N.W.2d 223] [all depreciation from mother's wholly owned S corporation must be added back into her income, including deductions reported under IRC § 179]; *Owens*, *supra*, 16 Suffolk J. Trial & App. Advoc. at pp. 192–194 ["Capital Expenditures and Section 179 Expenses"].)

In summary, the depreciation and section 179 expenses claimed by Martin and his corporations should have not reduced his income available for child support. (See *County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 316 [abuse of discretion standard does not allow trial courts to apply incorrect rule of law].) As a result, the matter must be remanded to the trial court to recalculate Martin's gross annual income and redetermine his child support obligation. (See Code Civ. Proc., §§ 43, 906 [appellate relief].)

III.    TAX RETURNS AND THE PRESUMPTION OF CORRECTNESS

    A.    Trial Court's Decision

        1.    *Burden of Proof*

The trial court's statement of decision identified the consideration of Martin's federal income tax returns as the starting point for its determination of his income available for child support. The court quoted *In re Marriage of Loh* (2001) 93 Cal.App.4th 325 (*Loh*):

> " 'A parent's gross income, as stated under penalty of perjury on recent tax returns, should be presumptively correct. (See *In re Marriage of Scheppers* (2001) 86 Cal.App.4th 646, 650, 103 Cal.Rptr.2d 529 ["Although federal law is not conclusive on the interpretation of section 4058, it is persuasive...."].) Returns are, after all, ultimately enforced by federal and state criminal penalties. Hence it is not surprising that tax returns are the core component of determinations under the guideline formula.' "

17.

The trial court addressed Jessica's assertion that the corporate tax returns of HRC and MHRC were incorrect with respect to various items of income and expense and her argument that the burden of proving the correctness of Martin's reported income should be placed on Martin because of the superior knowledge of Martin and his accountant. The court rejected the argument, stating it was "untenable in light of the language of *In re Marriage of Loh*, *supra*, 93 Cal.App.4th at page 332 describing the presumptive validity the Court must give to tax returns." The court also discussed *County of Orange v. Smith* (2005) 132 Cal.App.4th 1434 (*County of Orange*), stating it "confirms the presumption of correctness of the tax returns may be overcome by sufficient evidence to demonstrate that the tax return is incorrect, i.e. that [Jessica] bears the burden of proving that the tax return is in fact incorrect."

To summarize, the trial court reached three legal conclusions related to the burden of proof. First, income tax returns are presumed to be correct. Second, the presumption of correctness is rebuttable and may be overcome by sufficient evidence demonstrating the tax return is incorrect. Third, in this case, Jessica had the burden of proving that the income tax returns of Martin and his corporations were incorrect. The court applied the presumption of correctness not only to Martin's returns on Form 1040 (U.S. Individual Income Tax Return), but also to HRC's returns on Form 1120 (U.S. Corporation Income Tax Return) and MHRC's returns on Form 1120S (U.S. Income Tax Return for an S Corporation).

B.     Jessica's Contentions

Jessica contends the trial court erred in concluding she bore the burden of proving the income tax returns of HRC and MHRC were incorrect. She argues Martin should have the burden of proving any and all claimed expenses and deductions on the income tax returns of HRC and MHRC were valid and correct. In Jessica's view, the burden is appropriately allocated to Martin because he is the party with knowledge of, and access

18.

to, the information demonstrating whether or not the claimed expenses and deductions were, in fact, "expenditures required for the operation of the business." (§ 4058, subd. (a)(2).) In comparison, Jessica asserts she does not possess or have access to information about Martin's current financial condition or that of his businesses.

### C. General Principles for Allocating the Burden of Proof

#### 1. *Family Code and Family Rules*

Division 1 of title 5 of the California Rules of Court is "referred to as the Family Rules." (Cal. Rules of Court, rule 5.2(a).)[12] Rule 5.2(d) provides in part: "Except as otherwise provided in these rules, all provisions of law applicable to civil actions generally apply to a proceeding under the Family Code if they would otherwise apply to such proceeding without reference to this rule." Based on this provision's description of applicable law, we consider whether the Family Code or the Family Rules explicitly allocate the burden of proof applied to a self-employed parent's business income and expenses. The parties have not cited, and we have not located, any provision in the Family Code or the Family Rules allocating this burden of proof. Consequently, we turn to the "provisions of law applicable to civil actions generally." (Rule 5.2(d).)

#### 2. *Evidence Code*

Division 5 of the Evidence Code contains chapters addressing (1) the burden of proof, (2) the burden of producing evidence, and (3) presumptions and inferences. (Evid. Code, §§ 500–670.) Evidence Code section 500 contains the general rule of law used to allocate a burden of proof: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."[13] The California Law Revision Commission's

---

[12] Subsequent references to a numbered "Rule" are to the California Rules of Court.

[13] The Evidence Code defines the terms "law" and "proof" and the phrase "burden of proof." "Law" includes constitutional provisions, statutes and judicial decisions. (Evid. Code, § 160; cf. Civ. Code, §§ 22, 22.1.) "Proof" refers to "the establishment by

19.

comment to Evidence Code section 500 states: "Under Section 500, the burden of proof as to a particular fact is normally on the party to whose case the fact is essential." (Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965), p. 89 (7 Cal. Law Revision Com. Report).) In accordance with this general rule, "[t]he party seeking the modification [of child support] bears the burden of showing that circumstances have changed such that modification is warranted." (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1054; *Bardzik*, *supra*, 165 Cal.App.4th at p. 1303 [moving party in child support modification proceeding bears the burden of proof regarding changed circumstances]; see § 4069.) Consequently, if the general rule were applied to the issue of Martin's income available for child support, Jessica would have the burden of proof as to that issue because it is raised by her request for a modification of child support.

Having identified how the general rule would apply to the issue of Martin's income for child support purposes, we next address the analysis used to determine whether the general rule or an exception applies. This analysis starts with Evidence Code section 500's introductory phrase —"[e]xcept as otherwise provided by law." The California Law Revision Commission's comment explains this phrase by stating it was "included in recognition of the fact that the burden of proof is sometimes allocated in a manner that is at variance with the general rule." (7 Cal. Law Revision Com. Report, *supra*, p. 89.) Furthermore, the reference to exceptions "provided by law" means the burden of proof might be altered by a constitutional provision, statute or judicial decision. (Evid. Code, § 160 [definition of "law"].) Thus, the exception is worded to recognize

---

evidence of a requisite degree of belief concerning a fact in the mind of the trier of fact or the court." (Evid. Code, § 190.) "Burden of proof" is defined as "the obligation of a party to establish a requisite degree of belief concerning a fact in the mind of the trier of fact or the court." (Evid. Code, § 115.) Unless the law provides otherwise, the level of proof required is a preponderance of the evidence. (*Ibid.*)

that "courts may alter the normal allocation of the burden of proof." (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1188.)

"In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: [1] the knowledge of the parties concerning the particular fact, [2] the availability of the evidence to the parties, [3] the most desirable result in terms of public policy in the absence of proof of the particular fact, and [4] the probability of the existence or nonexistence of the fact." (7 Cal. Law Revision Com. Report, *supra*, p. 89.) Accordingly, when (1) a litigant such as Jessica argues the normal allocation of the burden of proof is not appropriate for a particular issue and (2) existing case law has not resolved the allocation of the burden for that specific issue, the court must analyze the argument by weighing these factors.

### 3. *Presumptions*

One way for a court to reallocate the burden of proof on a particular issue is to adopt a presumption. The Evidence Code defines a "presumption" as "an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in an action." (Evid. Code, § 600, subd. (a).) Presumptions are either conclusive or rebuttable. (Evid. Code, § 601.) Rebuttable presumptions are "either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof." (*Ibid*.; see Evid. Code, §§ 110 [burden of producing evidence defined], 115 [burden of proof defined].)

A presumption affecting the burden of proof is a rebuttable presumption "established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied." (Evid. Code, § 605.) Conversely, a presumption affecting the burden of producing evidence is used "to implement no public policy other than to facilitate the determination of the particular action in which the presumption is applied." (Evid. Code, § 603.) "It is the existence of

21.

this further basis in policy that distinguishes a presumption affecting the burden of proof from a presumption affecting the burden of producing evidence."  (7 Cal. Law Revision Com. Report, *supra*, p. 89.)

Evidence Code sections 630 through 647 set forth presumptions affecting the burden of producing evidence.  They include presuming that (1) a thing possessed by a person is owned by that person; (2) the date on a writing is true; and (3) a letter is received in the ordinary course of mail if it is correctly addressed and properly mailed.  (Evid. Code, §§ 637, 640, 641.)  Evidence Code section 660 through 670 contain presumptions affecting the burden of proof.  They include presuming that (1) a ceremonial marriage is valid, (2) an official duty has been regularly performed, (3) a person intends the ordinary consequences of a voluntary act, and (4) a person not heard from in five years is dead.  (Evid. Code, §§ 663, 664, 665, 667.)

D.  Existing Law and Its Allocation of the Burden of Proof

The foregoing principles relating to the allocation of a burden of proof and the use of presumptions are the foundation for our analysis of Jessica's contention that Martin has (or should have) the burden of proving the correctness of the expenses and deductions reported for himself and his corporations.  For purposes of this appeal, we split the issues raised by this contention into two categories.  The first category contains the specific questions that must be resolved to determine whether existing "law" already allocates the burden of proof on the issue of Martin's income available for child support.  The second category contains the questions that arise if existing law does not specifically resolve the issue and, as a result, this court must determine whether the burden of proof should be allocated to Jessica under the general rule or that allocation should be altered.  (See Evid. Code, § 500.)  In resolving the issues in the first category, we must consider constitutional provisions, statutes and judicial decisions.  (See Evid. Code, § 160 [definition of "law"].)

### 1. *Framing the Issue*

An important threshold question in completing our analysis of the two categories of questions involves framing the particular factual issue that needs to be proven. Once that factual issue is properly framed, we can begin the analysis of who has the burden of proof.

Here, Martin is a self-employed parent who has organized his businesses of farming his own properties and providing farm management services to third parties into two wholly owned corporations. One of the corporations, HRC, is a C corporation that pays income tax. The other corporation, MHRC, is an S corporation that does not pay income tax. Instead, its income flows through to Martin and he reports that income on his individual tax return. The business activities of the corporations are intertwined, which is reflected in the many transactions between the two corporations. For instance, MHRC manages properties owned or leased by HRC. HRC owns farm equipment and rents it to MHRC for use in MHRC's farm management business. Also, the wages of MHRC's 22 general labor workers are paid by HRC and MHRC reimburses HRC for that cost.

Based on the foregoing, we frame the factual issue presented by the application of subdivision (a) of section 4058 to circumstances presented in this case as follows: What is the amount of income available for child support where a self-employed parent's businesses are organized into two wholly owned entities (one a taxpaying entity and the other a flow-through entity) and the operations conducted by those entities are intertwined.

### 2. *Constitutional Provisions and Statutes*

First, the parties have not cited, and we have not located, any constitutional provision *expressly* allocating the burden of proof on the issue of a self-employed parent's business income and expenses for purposes of determining child support, regardless of how the business is organized. Second, the parties have not cited, and we

have not located, any provision in the Family Code, Family Rules, Evidence Code or other statute *expressly* allocating the burden of proof on this issue.[14] Consequently, our examination of existing law turns to judicial decisions to see if they provide an explicit answer to the question presented by the facts of this case. As explained below, they do not.

### 3. Case Law

In *Loh*, the Fourth District set forth the principle that income tax returns are presumptively correct as to parent's income in a child support proceeding. (*Loh*, *supra*, 93 Cal.App.4th at p. 332 [Heading III.C.].) In that case, the father was "a recently unemployed stockbroker who had just lost his license and started an unrelated business." (*Id*. at p. 327.) The father testified that his new business sold "race car parts, which allowed him to make $2,000 to $3,000 a month net." (*Id*. at p. 329.) He had stipulated to provide certain documents, including his state and federal tax returns for 1997–1998, but he failed to comply, and the custodial parent did not bring a discovery motion to enforce the stipulation. The father filed his income and expense declaration the day of the hearing and it showed a current net disposable income of about $2,300. (*Id*. at p. 328.) "In the absence of tax returns, the only evidence as to [father's] income was his own

---

[14] In comparison, some state legislatures have specifically addressed the burden of proof on the issue of income from a parent's business. Oregon Revised Statutes section 25.290 states: "(1) In determining the disposable income of an obligor [parent for purposes of child support], the obligor may claim offsets against gross receipts for ordinary and necessary business expenses and taxes directly related to the income withheld. The obligor has the burden of proof and must furnish documentation to support any offsets claimed." Also, Minnesota Statutes section 518A.30 defines income from self-employment or operation of a business for purposes of computing child support as "gross receipts minus costs of goods sold minus ordinary and necessary expenses required for self-employment or business operation." As to the burden of proof, this section states: "The person seeking to deduct an expense, including depreciation, has the burden of proving, if challenged, that the expense is ordinary and necessary." (Minn. Stat., § 518A.30.)

testimony and his income and expense declaration." (*Id*. at p. 336.) The Fourth District concluded that the evidence presented did not justify the upward modification of support and reversed the modification order, which was based primarily on inference drawn from the father's lifestyle. (*Ibid*.)

In *Loh*, the court's statement that "[a] parent's gross income, as stated under penalty of perjury on recent tax returns, should be presumptively correct" (*Loh, supra,* 93 Cal.App.4th at p. 332) was dicta because none of the father's post-separation income tax returns were part of the record. As a result, *Loh* is not authority for the principle that gross income declared on an individual income tax return is correct, much less that the corporate income tax returns of a C corporation and an S corporation owned entirely by a self-employed parent are presumed correct. (See *Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 641 [it is axiomatic that cases are not authority for propositions not considered].)

Similarly, in *County of Orange*, the self-employed father's business was not organized as multiple wholly owned entities with intertwined operations. (*County of Orange*, *supra*, 132 Cal.App.4th 1434.) In that case, the father operated his cabinet installation business out of a rental home. (*Id*. at p. 1438.) The father's income and expense declaration of September 2001 stated he earned $16,800 in the preceding 12 months and his May 2003 declaration stated he earned $13,415.40. (*Id*. at pp. 1439, 1440.) The court made no reference to the manner in which the cabinet installation business was organized. Thus, *County of Orange*, like *Loh*, does not hold that the income tax returns of a self-employed parent's multiple wholly owned entities are presumed correct.

In *In re Marriage of Barth* (2012) 210 Cal.App.4th 363, a self-employed certified public accountant challenged a child support order. The trial court based the support order on his imputed income, stating that " '[w]hile Petitioner's tax returns would otherwise be presumed correct, that presumption is soundly rebutted in this case.

25.

[Citation.] Petitioner's 2008 and 2009 tax returns substantially understate his actual gross income.' " (*Id*. at p. 370.) The appellate court did not analyze the presumption of correctness, it simply accepted it and concluded it had been rebutted. Therefore, even though the father had set up a professional partnership and a limited liability company in California and a limited liability company and another business in Ohio, that decision does not establish the principle that the income tax returns of a self-employed parent's multiple wholly owned entities are presumed correct.

Other cases referring to the presumption of correctness of recent income tax returns did not involve a self-employed parent who had organized his or her business or businesses into multiple wholly owned entities. (See e.g., *M.S. v. O.S.* (2009) 176 Cal.App.4th 548 [unemployed father reported income received from Indian tribe on federal income tax returns]; *In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747 [father was a self-employed mathematician who was an independent contractor in the computer software industry; how his business was organized was not described]; *In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28 [father owned and operated a self-service gas station and reported the profit or loss from that business on Schedule C of his federal tax returns; presumption of correctness was rebutted by statement of income on loan application].)

In *In re Marriage of Alter* (2009) 171 Cal.App.4th 718, the obligor parent was self-employed, owning and operating a retail drapery business. (*Id*. at p. 724.) The court did not discuss how the business was structured or organized. In addition, the Sixth District did not expressly endorse the presumption of correctness, but stated "that, even if recent tax returns set forth the presumptively correct amount of income, the presumption could be rebutted by evidence of recurring gifts of money that form a regular part of the parent's income picture." (*Id*. at pp. 734–735.) The court concluded the trial court did not abuse its discretion in considering the obligor parent's regular receipt of cash gifts

from his mother as income available for the support of his children even if the gifts were not considered taxable income under federal law. (*Id.* at p. 737.)

Based on our review of the cases, we conclude the specific issue about the burden of proof presented by the facts of this case has not been resolved in a published opinion. Therefore, we proceed to the second category of issues—that is, the issues a court must resolve when deciding whether to alter the normal allocation of the burden of proof.

E.    Altering the Normal Allocation of the Burden of Proof

1.    *Knowledge of the Facts*

The first factor courts consider when determining whether to alter the allocation of the burden of proof specified by Evidence Code section 500's general rule, is "the knowledge of the parties concerning the particular fact." (7 Cal. Law Revision Com. Report, *supra*, p. 89; see *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 660.) For example, in *In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, the husband had exclusive control and management of the community assets and, as managing spouse, had the best knowledge of where the assets and accounts were located. (*Id.* at p. 1265.) In that case, the court shifted the burden of proof on missing community assets to the managing spouse. (*Id.* at p. 1268.) Here, the knowledge factor weighs in favor of allocating the burden of proof to Martin because he, and persons he employs, manages the businesses. As a result, Martin and persons employed by him have more knowledge about the income and expenses of Martin's businesses than Jessica, who is not involved in the businesses.

2.    *Availability of the Evidence*

The second factor courts consider when addressing the allocation of the burden of proof is "the availability of the evidence to the parties." (7 Cal. Law Revision Com. Report, *supra*, p. 89.) This factor requires little discussion as it is readily apparent that the availability of evidence about the income and expenses of RHC and MHRC weighs in

27.

favor of allocating the burden of proof to Martin because, as the sole shareholder and president of both corporations, he has control over the financial records of the businesses. (See *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 35 ["where essential financial records are in the exclusive control of the defendant who would benefit from any incompleteness, public policy is best served by shifting the burden of proof to the defendant, thereby imposing the risk of any incompleteness in the records on the party obligated to maintain them"].)

### 3. *Public Policy Considerations*

The third factor courts consider when addressing the allocation of the burden of proof is "the most desirable result in terms of public policy in the absence of proof of the particular fact." (7 Cal. Law Revision Com. Report, *supra*, p. 89.) The importance of this factor is demonstrated by the distinction between a presumption affecting the burden of proof and a presumption affecting the burden of producing evidence. A presumption affecting the burden of proof is established "to implement some public policy other than to facilitate the determination of the particular action." (Evid. Code, § 605.)

Typically, courts considering whether to shift the burden of proof characterize it as a question of policy and fairness based on experience in the different situations. (*Adams v. Murakami* (1991) 54 Cal.3d 105, 120.) The policy considerations relevant to child support have been prioritized by the Legislature, which determined that "the interests of children [i]s the state's top priority." (§ 4053, subd. (e).) Furthermore, "[a] parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." (§ 4053, subd. (a).)

We conclude the policy that seeks to advance children's interest and considerations of fairness to the parents who are litigating the issue weigh in favor of giving Martin the burden of proof on the question of his business income and expenditure under section 4058 subdivision (a)(2). This conclusion recognizes that "a spouse who is

the owner of a successful business and who has control of his or her income can structure income and the payment of expenses to depress income." (*In re Marriage of Chakko* (2004) 115 Cal.App.4th 104, 109.) This concern about the manipulation of income by a self-employed parent is shared by courts in other states.

> "Other jurisdictions have concluded that a self-employed parent's business deductions should be carefully scrutinized to avoid the sheltering of income at the expense of lessening income available for child support. They have also recognized that tax returns alone do not always provide an accurate determination of a self-employed parent's income. 'It is the disposable income of the parent and not their income tax returns alone, which must be considered by the Court.' *Stewart v. Stewart*, 243 Mont. 180, 793 P.2d 813, 814 (1990) (quotation marks and citations omitted).

> "In *Merrill v. Merrill*, 587 N.E.2d 188, 189 (Ind.Ct.App.1992), the Indiana Court of Appeals acknowledged that a self-employed person has the discretion to defer current income by incurring debt, and there could be a situation in which there would then be very little income to be considered available for determining child support. It noted that income tax returns may be helpful in determining gross income of the self-employed parent, but that deductions for child support purposes 'may differ significantly from those allowed for tax purposes.' *Id*. at 190.

> "Other jurisdictions have also decided that in situations involving child support it is necessary to examine the total financial situation of a self-employed parent, rather than to merely rely on tax returns for a determination of income. See *Pierce v. Pierce*, 268 Ark. 864, 866, 596 S.W.2d 364, 366 (1980) (in determining income of self-employed father for child support, 'the tax return alone [was] not an accurate indicator of [the father's] available expendable income'); *Freking v. Freking*, 479 N.W.2d 736, 740 (Minn.Ct.App.1992) (tax returns not always reliable indication of net income available for child support); *Padilla v. Montano*, 116 N.M. 398, 862 P.2d 1257, 1265 (1993) (in determination of father's gross income for child support, limiting evidence to father's tax returns too restrictive)." (*Doe v. Child Support Enforcement Agency of Hawaii* (Haw.App. 1998) 87 Haw. 178, 182 [953 P.2d 209].)

The court in *Doe v. Child Support Enforcement Agency of Hawaii* stated agencies and courts should carefully scrutinize the reasonableness and appropriateness of a self-employed parent's business decisions that reduce the amount of income available for

child support.  It concluded "the family court was wrong when it created a presumption of correctness for all business deductions reported by Father on his tax return."  (*Doe v. Child Support Enforcement Agency of Hawaii*, *supra*, 953 P.2d at p. 213.)

We conclude that considerations of public policy and fairness, informed by the judicial system's experience in the cases involving the income and business expenses of a self-employed party, weigh in favor of assigning Martin the burden of proof on the factual questions that must be resolved to determine his business income and expenditures under section 4058 subdivision (a)(2).

### 4. *Probability of Existence or Nonexistence*

The fourth factor considered by courts when addressing the allocation of the burden of proof is "the probability of the existence or nonexistence of the fact."  (7 Cal. Law Revision Com. Report, *supra*, p. 89.)  Here, the facts in question are the gross receipts of the businesses and the "expenditures required for the operation of the business."  (§ 4058, subd. (a)(2).)  We regard this factor as neutral.

### 5. *Result of Weighing the Factors*

On balance, we conclude the factors weigh in favor of shifting the burden of proof to Martin.  As the sole shareholder and president of both corporations, his knowledge of the expenditures required for their operations and the gross receipts they generate and his access to evidence are vastly superior to Jessica's knowledge and access.  Furthermore, considerations of public policy and fairness support allocating the burden of proof to him. Consequently, we conclude there is no presumption of correctness that applies to Martin's individual tax returns and the corporate tax returns of HRC and MHRC. Instead, Martin has the burden of proving the amount of the gross receipts of the businesses and amount of the expenditures required for the operation of the businesses. (See *Lavigne v. James* (La.App. 2015) 170 So.3d 1163, 1166 [for purposes of determining income for child support, self-employed owner of a business seeking to

subtract ordinary and necessary business expenses from gross receipts has the burden of proving the expenses are ordinary and necessary].)

Accordingly, the question of Martin's gross annual income under section 4058, subdivision (a) must be remanded for further proceedings in which he bears the burden of proof. In those further proceedings, a presumption that his individual federal income tax returns and the corporate income tax returns of HRC and MHRC are correct does not apply. As to the category of expenses that provide self-employment benefits to Martin, those benefits and the question of whether they increase his gross annual income must be resolved in accordance with subdivision (a)(3) of section 4058. That subdivision provides that Martin's income includes, "[i]n the discretion of the court, employee benefits or self-employment benefits, taking into consideration the benefit to the employee, any corresponding reduction in living expenses, and other relevant factors." (§ 4058, subd. (a)(3).) It is improper to exercise this discretionary authority by referring to a presumption that tax returns are correct. In other words, the fact the amounts paid by the corporations to provide a particular benefit was properly reported as a deduction on the tax returns is not a "relevant factor" to that benefit's impact on the recipient's income pursuant to subdivision (a)(3) of section 4058.

IV.     VOIDABLE JUDGMENT[*]

Jessica contends the findings and order after hearing is a voidable judgment because it (1) did not conform to the 16-page statement of decision and (2) was not entered by the judge who issued the statement of decision.

We need not address these contentions because the statement of decision and related findings and order after hearing are reversed on other grounds. As a result, neither will remain in effect after remittitur and the question of whether the findings and order after hearing conforms to the statement of decision is moot.

---

[*]     See footnote, page 1, *ante.*

## V.    ATTORNEY FEES*

The trial court's statement of decision addressed Jessica's request for attorney fees by quoting sections 2030 and 2032 and stating:  "While the court has discretion in fashioning an attorney fee award, its decision must reflect an exercise of discretion and a consideration of the appropriate factors as set forth in sections 2030 and 2032.  *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 242 (award based only on disparity of income is an abuse of discretion.)"  The court's evaluation of the statutory factors is reflected in the following paragraph:

> "Here the Court has determined there is not a disparity in income that would justify the award of attorney's fees.  The gross income figures used by the Court are set forth above.  Additionally, the Court must also evaluate the other party's ability to pay taking into account his or her payment of other obligations, including the existing order for support.  In analyzing the income differential between the parties, the Court notes that during the initial period of the support calculation made above, [Jessica's] net percentage of the joint spendable income is approximately 62% of the total.  While the differential changes with the deletion of [a daughter] from the calculation, the relative incomes of the parties become essentially equal. Therefore, the Court will not award attorney's fees to [Jessica]."

The trial court's decision to deny attorney fees was decided before this court published a decision identifying the specific steps the trial court must take when evaluating a request for attorney fees under Family Code sections 2030 and 2032. (*Morton*, *supra*, 27 Cal.App.5th at pp. 1049–1050, 1052–1053.)[15]  Here, the trial court's finding of fact addressing "whether there is a disparity in access to funds to retain counsel" (§ 2030, subd. (a)(2)) was based on its determination of Martin's and Jessica's income for purposes of calculating guideline child support.  Because the determination of

---

*       See footnote, page 1, *ante*.

[15]     *Morton* also addressed the treatment of a parent's tax refunds for purposes of determining child support.  (See *Morton*, *supra*, 27 Cal.App.5th at pp. 1040–1042.)  The issue of whether the $12,788 in 2012 state and local refunds not taxable in 2013 should be included in income available for support may be raised and resolved on remand.

Martin's income has been reversed, we also vacate the trial court's denial of Jessica's request for attorney fees. On remand, the issue of attorney fees will be "at large"—that is, it should be treated as if it had not been addressed and resolved in the statement of decision. (See *Regents of University of California v. Public Employment Relations Bd.* (1990) 220 Cal.App.3d 346, 356–357.)[16]

## DISPOSITION

The statement of decision and the related findings and order after hearing are reversed, and the matter is remanded to the trial court for further proceedings not inconsistent with this opinion. Appellant shall recover her costs on appeal.

FRANSON, J.

WE CONCUR:


HILL, P.J.


PEÑA, J.

---

[16] We do not decide the legal question of whether the determination of the parent's income for purposes of child support may be the sole basis for resolving the factual question of "whether there is a disparity in access to funds to retain counsel." (§ 2030, subd. (a)(2).)

33.